ELLEN GREANY, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

In an action against a railroad company to recover for injuries sustained at a crossing, where the negligence alleged was the failure to ring a bell or blow a whistle as the train approached the crossing, testimony of passengers on the train, who were in a position to have heard, that they did not hear either of these signals, is competent, although it does not affirmatively appear that they were looking, watching or listening therefor.

Where in such an action there is any evidence, direct or inferential, of care or caution on the part of the person injured, the question as to contributory negligence is for the jury.

While a person approaching a crossing is bound to make all reasonable efforts to see, that a careful, prudent man would make in like circumstances, his failure to see an approaching train does not of itself discharge the company from liability for negligence on its part in omitting the statutory signal.

In such an action plaintiff's testimony was to the effect that she lived

north of defendant's road ; she was going south from her home upon a highway which crossed the tracks of said road at a station located south of the tracks. As she approached the crossing, a train going east on the south track stopped at the station; its cars reached across the highway, leaving no room to pass. She stopped for awhile, and then proceeded ; she stopped again as she reached the north track ; just then the train started up. She testified that as she came up to the track, she looked both ways "along the track, and saw no engine," except that of the train at the station. She took a step or two to cross, and as she did so, saw a train coming from the east on the north track, but so close that she could not escape, and she was struck by it and injured. This occurred in what seemed to the witness not more than a few seconds after she had looked up and down the track. The trains did not usually meet at the station, but the one going east was behind time. On cross-examination the plaintiff testified that if she had looked earlier, she might have seen the train, but did not think there was any need of looking more than once, and did not think there was any other train due at that time ; that she had. looked a few. seconds before, and then went on. The engine at the station was blowing off steam, and she did not hear any bell or whistle from the approaching train. This there was testimony tending to show was running at a dangerous rate of speed. *Held,* that the question of contributory negligence was properly submitted to the jury.

(Argued December 17, 1885 ; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 11, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for injuries sustained by plaintiff, who was struck by an engine attached to a train on defendant's road, as she was crossing its tracks at a highway crossing.

The material facts are stated in the opinion.

*Edward E. Sprague* for appellant. The court erred in allowing testimony, as to defendant's omission to sound the whistle and bell, from witnesses who were not in a position to have observed the signals. (*Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 133 ; *McKeever* v. *N. Y. C. & H. R. R. R. Co.*, 88 id. 667 ; *Chapman* v. *N. Y. C.*, 14 Hun, 485 ; *Tolman*

v. *S. B. & N. Y.*, 27 id. 325, 327.) Plaintiff should have been nonsuited on the ground of contributory negligence. (*Salter* v. *U. & B. R.*, 88 N. Y. 42; 75 id. 279; *Adolph* v. *C. P. N. & E. R.*, 76 id. 535; *Tolman* v. *S. B. & N. Y.*, 98 id. 198; *Becht* v. *Corbin*, 92 id. 658; *Connelly* v. *N. Y. C.*, 88 id. 346; *Byrne* v. *N. Y. C.*, 83 id. 620; 34 Iowa, 153; 5 Am. R. Rep.; 469.)

*John Fleming* for respondent. It was negligence in defendant not blowing whistle, or sounding bell at crossing. (3 Edm. Stat. [2d ed.] 643; *Renwick* v. *N. Y. C. R. R. Co.*, 36 N. Y. 132, 133; *Salter's Case*, 59 id. 631; 88 id. 50.) It was negligence of the grossest kind in defendant running a train at high speed over a public highway within a few feet of its depot, while another train having just passed over the highway in an opposite direction was standing at that depot, receiving and discharging passengers, and its engine letting off steam; and when that depot was not the place for the trains of defendant to pass or meet each other, and when defendant omitted to give any signals or warning of the approaching fast train. (*Salter's Case*, 88 N. Y. 50; *Brassels* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 274; *Terry* v. *Jewett*, 78 id. 344; *Smedis* v. *Rockaway Beach R. R. Co.*, 88 id. 20; *John* v. *H. R. R. R. Co.*, 20 id. 65; *Renwick* v. *C. R. R. Co.*, 36 id. 132.) Nor would the ringing of bell or blowing of whistle, or both, relieve defendant under the circumstances disclosed by this case. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 124; *Smedis Case*, 88 id. 20.) Whether plaintiff was guilty of contributory negligence was a question of fact. (*Massoth* v. *D. & H. C. Co.*, 64 N. Y. 529; *Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 73; *Terry* v. *Jewett*, 78 id. 342; *Salter* v. *U. & B. R. R. R. Co.*, 88 id. 50; *Hart* v. *H. R. R. R. Co.*, 80 id. 622; *Shaw* v. *Jewett*, 86 id. 616; *Cassidy* v. *Angeli*, 12 R. I. 447; *Louisville C. & L. R. R Co.* v. *Goetz*, 79 Ky. 442; *Mahar* v. *Grand T. R. R. Co.*, 19 Hun, 32; *Tolman* v. *Syracuse, B. & N. Y. R. R.*, 98 N. Y. 198.) The plaintiff was not guilty of contributory negligence.

(*Johnson Case*, 20 N. Y. 65 ; *Brown Case*, 32 id. 600; *Beisigel Case*, 34 id. 622 ; *Mackay* v. *N. Y. C. R. R. Co.*, 35 id. 79; *'Ernst* v. *H. R. R. R. Co.*, id. 9 ; *Eaton* v. *Erie R. Co.*, 51 id. 544; *Roach* v. *Flushing R. R. Co.*, 58 id. 626 ; *Carr Case*, 60 id. 633; *Mahar Case*, 19 Hun, 32 ; *Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 464 ; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 244; *Shaw* v. *Jewett*, 86 id. 616 ; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 290 ; *Terry* v. *Jewett*, 86 id. 344 ; *Louisville & Lexington R. R. Co.* v. *Goetz*, 79 Ky. 442 ; *Wanless Case*, 9 Eng. Rep. [Moak's] 1; *Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 560; *French* v. *Taunton R. R.*, 116 Mass. 537 ; *Detroit & M. R. R. Co.* v. *Steinberg*, 17 Mich. 99.) There was no error in the court allowing question put to witness as to hearing bell or whistle. (*Salter* v. *U. & B. R. R.*, 59 N.Y. 631; *Renwick* v. *N. Y. C. R. R. Co.*, 36 id. 132.) The circumstances of the case were such as to make listening for bell or whistle unavailing and to excuse plaintiff's witnesses from listening, or trying to listen. (*Smedis Case*, 88 N. Y. 19.)

DANFORTH, J. The appellant concedes there was evidence upon which the jury might find negligence on its part, but contends :

*First.* That certain negative evidence from persons who did not affirmatively appear to have been "looking, watching, or listening for the ringing of a bell or sounding of a whistle," was improperly received to prove that those signals were not given; and *Second.* That the plaintiff should have been non-suited on the ground of her contributory negligence.

As to the first: It is apparent that the best evidence of the fact in dispute would be the testimony of those persons who on the particular occasion in question had the custody or management of the bell or whistle. They were, however, in the employ of the defendant; themselves interested in proving that the proper signals were given by those instruments, and the law does not require an adverse party to put his case in the hands of persons having such relations to the transaction.

Besides those persons, all others must give evidence secondary in character. One person might be watching the bell — looking at it, or listening for its sound; the value of his testimony would depend upon his nearness to the machine, the accuracy of his sense of sight or hearing, the existence, or force, or direction of the wind, and other causes. Another person might be neither looking nor listening, and yet his position be such, and the circumstances about him so favorable that his testimony would be of equal or greater persuasive power than that of the other. A jury must ascertain. An appellate court cannot say that the testimony of either should be rejected. Nor should a trial judge be required to determine its weight, or the fact which it did, or did not ascertain, if it has any legal effect. No error, therefore, was committed in allowing the witnesses K., T. and R. to testify. They were passengers upon the train causing the injury, were in such position that it would not have been impossible for them to have heard the signal if it had been given. There was also abundant evidence from persons whose attention was directed to the train, to justify a finding that the statutory signals were not given, and the whole was submitted to the jury not only in a manner to which no exception was taken, but upon this point, in the very language suggested by the learned counsel for the defendant, adapted to the occasion from *Culhane* v. *N. Y. C. & H. R. R. R. Co.* (60 N. Y. 133), upon which without proper foundation he then relied and now cites. It cannot be so extended as to justify the exclusion of evidence.

As to the second point: It would be error for a trial court to grant a nonsuit if by any allowable deduction from the facts proved a cause of action might be sustained by the plaintiff, and when such ruling has been upheld by reason of the contributory negligence of the person injured, it appeared that such negligence was conclusively established by evidence which left nothing either of inference or of fact in doubt or to be settled by a jury. (*Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524, 529.) In *Kellogg* v. *N. Y. C. & H. R. R. R. Co.* (79 N. Y. 72) there was under review a nonsuit directed upon this ground by

the General Term, and we readily granted a new trial upon the applications of principles then declared to have been frequently laid down, and which must now govern. In that case the only negligence of the defendant was the omission to give a signal of the approaching train; the plaintiff came upon the crossing and was struck; a moment before he was seen looking to the north and it was claimed that he ought to have looked also toward the south, and that if he had he would have escaped harm, and it was also claimed that if he had listened he would have heard the approaching train. Referring to the situation of the man and his surroundings, the court (EARL, J.) says: "Whether, under such circumstances, by the exercise of ordinary prudence, he did or could have heard, was a question, upon all the facts proved, for the jury. It is unquestionably true that the deceased was bound to exercise his sight to avoid danger at the crossing. He was not bound to the greatest diligence which he could have exercised in that way; but he was bound to exercise such care as a prudent man approaching such a place would ordinarily exercise for the protection of his life. Did he exercise such care? Or, in other words, was there an entire absence of evidence that he did?" * * * * * "We cannot say that at that particular time he should have looked toward the south. It was for the jury to determine whether he exercised that care which the law required of him. He could probably have avoided the accident by stopping before he passed upon the track. But that is a degree of care not usual even with very prudent persons. It has not been decided by the courts of this State that a person approaching a railroad is bound as matter of law to stop, to avoid the imputation of negligence." And referring to evidence as to the distance at which an approaching train could be seen from various points, the learned judge says: "Such evidence is frequently very reliable and satisfactory. But it is not necessarily conclusive. Such experiments are made when the witnesses are calm and their whole minds, free from any distractions, are intent upon the matter in hand. They cannot be made under the precise circumstances which attended the transaction to be investigated." And to the same effect among re-

cent cases is *Shaw* v. *Jewett* (86 N. Y. 616), where, in answer
to the claim that the trial judge erred in refusing to charge the
jury " that if they believed that the plaintiff could have seen
the train at distance enough from the track to have stopped his
horse before reaching the track, his failure to see the train
was negligence on his part and he was not entitled to recover,"
this court held there was no error, saying :   " That is not the
rule.   The plaintiff is not bound to see ; he is bound to make
all reasonable efforts to see that a careful prudent man would
make in like circumstances.   He is not to provide against any
certain result.   He is to make an effort for a result that will
give safety ; such effort as caution, care and prudence will
dictate."   I know of no exception to the doctrine that where
there is any evidence, direct or inferential, of care or caution
on the part of the person injured, the question whether it was
in compliance with that rule, is for the jury.

In the case before us the accident happened on the 17th of
August, 1882, at about five o'clock in the afternoon, at Rich-
mond Hill, where the defendants had a station, and by which
passed two of their tracks running east and west, intersecting a
highway running north and south.   The station was at this
point and on the south side of the track.   The plaintiff lived
on the north side of the railroad, and at the time in question
was going along the highway to a store situated on the south
side of the tracks.   As she came to the tracks to cross the rail-
road, she saw a train coming from the west on the southerly
track ; it stopped at the station to let off passengers, and its cars
covered the highway.   She stood still, waiting about five minutes
for the train to move ahead, but when she reached the track the
train was still standing there and she stopped just as it started.
She " went to walk across too."   She says :   " As I came up to the
track I stood and looked both ways, and along the track, and saw
no engine " other than that of the train from the west.   She took
a step or two, and just as she did so, saw a train coming from
the east on the north track, but it was so close that she could not
make her escape.   This occurred in what seemed to her not
more than a few seconds after she had looked up and down the

track. On cross-examination by the defendant's counsel, she says: "When I stepped on the first track I looked both ways and could see nothing, and but a few seconds after that I was struck." I could see no engine, looking either way. The train going west had not then left the station. She says: "It was just in the motion of moving ahead at the time I took a step or two, then I stopped on the north track just by the side of the track." She was not between the rails, but stood by the side of the rail, looking at the train, still at the crossing. Asked by the defendant's counsel: "Q. If you had stepped up by the side of that track and looked up the road, you would have seen the train, wouldn't you?" She says: "I did look up, and saw it too. It was so close by me that I could not possibly make my escape. If I had looked earlier I would have seen it, but I did not think there was any need of my looking more than once, and I did not think there was any other train due at that time. I had looked a few seconds before and then went right on. When I looked I could see about a quarter of a mile. I did not see any train, and then I walked on toward the track, and the train was right upon me before I noticed it." At this time the engine at the depot was blowing off steam, and she heard no bell or whistle from the train coming from the east. According to the defendant's time table these trains should not have met or passed each other at this station, but the train going east was behind time. The engineer in charge of the train going west first saw the plaintiff when six hundred feet distant. Can it be said under these circumstances that she was bound as matter of law to see the incoming train? Was it not rather for the jury to say whether or not she had made the effort which a prudent person would make in like circumstances? I think it was for the jury, for it cannot be said to be impossible for a reasonable person to conclude that the accident was caused by the negligent running of the defendant's train, and not by the omission of a duty, or reasonable care on the part of the plaintiff to avoid the collision. The train was unexpected; it was running, as the jury might find, at a dangerous rate of speed, giving no signals of its approach, while the escape of steam

and the noise made by the other engine might distract and to some extent divert the attention of the plaintiff, who nevertheless was not heedless, but looked in both directions along the track. Whether she looked exactly at the right moment, or in each direction in proper succession, or from the place most likely to afford information, cannot be determined as matter of law, and whether upon the whole, and in view of all the surrounding circumstances, including the negligent conduct of defendant, she exercised due care, was a question which the trial court could not properly decide for itself, but was bound to submit to the jury as one which they alone could answer.

The judgment rendered upon their verdict should, therefore, be affirmed.

All concur, except RUGER, Ch. J., EARL and FINCH, JJ., dissenting.

Judgment affirmed.