PETER BOMBOY, RESPONDENT, v. THE NEW YORK
CENTRAL AND HUDSON RIVER RAILROAD COM-
PANY, APPELLANT.

*When a failure to look in the direction of an approaching train will be held to be
contributory negligence.*

Upon the trial of this action, brought by the plaintiff to recover damages for
injuries caused by a collision with one of the defendant's trains of cars, evidence
was given showing that the plaintiff, a milk peddler, was sitting in his wagon
driving his team in a westerly direction, along a highway running nearly east
and west, which was crossed by the railroad of the defendant, which runs from
the south-east to the north-west; that as the plaintiff was moving towards the
crossing at a rate of about four miles an hour a regular passenger train was
passing in a westerly direction over the defendant's railroad, moving at a rate
of twenty miles an hour, upon the plaintiff's left; that an intervening hill shut
off his view of the approaching train, and there was no evidence to show that
he could have seen it until he was within twenty-six feet of the crossing, at
which point the head of the locomotive would have been 130 feet away, and
the plaintiff could have seen the locomotive and 170 feet of the track beyond
it. The collision occurred, according to the plaintiff's testimony, when his
horses had barely stepped one or two steps upon the track and had stopped of
their own accord.

*Held,* that, as at the rate of speed at which the plaintiff was moving he would need
between four and five seconds to go twenty-six feet, and as there was no object
which appeared to have distracted his attention, and he had testified that he,
for the first time, saw the locomotive when his horses stopped, that a judgment
recovered by him should be set aside on the ground that he was guilty of con-
tributory negligence in failing to look in the direction of the approaching train
after he had approached to within twenty-six feet of the track.

*Woodard* v. *New York, Lake Erie and Western Railroad Company* (106 N. Y.,
369) followed; *Greany* v. *Long Island Railroad Company* (101 id., 419); *Sherry*
v. *The New York Central and Hudson River Railroad Company* (104 id., 652) and
*Glushing* v. *Sharp* (96 id., 676) distinguished.

APPEAL from a judgment in favor of the plaintiff entered upon
the verdict of a jury at the Albany Circuit.

The action was brought to recover damages for injuries to the
plaintiff, his wagon, harness and horses, caused by a collision with
defendant's train of cars upon a highway crossing. The railroad of
the defendant from Troy to Schenectady is intersected in the outskirts
of the city of Cohoes by the public highway called the Manor road.

The railroad there runs from the south-east to the north-west; the highway nearly east and west, the angle of intersection being about fifty-seven degrees. Between twelve and one o'clock in the day-time on the 9th of June, 1885, the plaintiff was sitting in his wagon driving his team of horses along this highway westerly from the compact part of Cohoes towards this railroad crossing. He was a milk peddler and had been over this road and crossing nearly every day for twenty-eight years. He had empty milk cans in his wagon. As he was thus riding the railroad was upon his left. A hill shut off his view of any train approaching the crossing from the east, until he came to a point about 100 feet from it, when the hill sloped down to the grade of the crossing. At 100 feet from the cross-ing, sitting in his wagon, he could see the stack of a locomotive ninety-nine feet down the railroad from the crossing upon his left; when fifty feet distant he could see the locomotive in the same direction 142 feet; when twenty-six feet from the crossing he could see the locomotive in the same direction 320 feet and at twenty-four feet, 792 feet. The train was the regular passenger train, on time and running about twenty miles an hour. When the plaintiff's horses had stepped upon the track, he heard the whistle and saw the train approaching from the east, on his left; he tried to turn the horses to the right, so as to get them off the track, but the engine struck and killed them and injured the harness and wagon and bruised the plaintiff. The plaintiff testified: " I had been looking for the train, but did not see any ; when I got near the railroad I looked up and I looked down, but did not see any; I did not see any locomotive before I got upon the track ; when I drove upon the track I just got two steps, hardly one step, the horses just stopped ; then I heard the noise and I hauled my horses north with their heads; the train struck me." He testified that he looked up and down the track when he was about thirty feet from it, when about fifteen and when about ten feet, but saw no train. His horses were upon a walk. The wind was blowing strongly from the west. There were gates at the crossing, but plaintiff testified that up to the time of the accident they had never been used.

*H. Harris,* for the appellant.

*D. C. Herrick* and *J. H. Gleason,* for the respondent.

LANDON, P. J. :

The question presented by this appeal is whether the negligence of the plaintiff is so conclusively shown by the evidence that we ought to say, as a matter of law, that he is not entitled to the judgment he recovered. The law is plain and simple, but we must try to make its application consistent with the more recent examples given us by the court of last resort — a task somewhat difficult.

In the case before us a regular passenger train was passing westerly over the railroad upon schedule time, at its regular rate of speed, although in excess of that prescribed by the ordinance of the city in whose outskirts it ran. As it approached the crossing its bell and whistle were heard by others, but not by the plaintiff, owing, probably, to the fact that the wind was blowing strongly from a direction opposite to that which he and the train were moving, and owing to the fact that he had empty milk cans in his wagon which probably rattled. He was moving about four miles an hour and the train twenty miles — five times faster — upon converging lines, the train upon his left. An intervening hill so shut off his view of the approaching train that, assuming the respective rates of speed to be as above stated, we have no evidence that he could have seen it until he was within twenty-six feet of the crossing, at which point the head of the locomotive would have been 130 feet away and the whole train in sight. The evidence is that at fifty feet he could see down the track towards the approaching train, 142 feet, but at fifty feet the train was 250 feet away and out of sight. At what point between fifty and twenty-six feet the train would come in sight of the plaintiff the evidence does not instruct us. At twenty-six feet he could see down the track so as to see a locomotive 320 feet or 170 feet beyond the locomotive. For twenty-six feet distance from the crossing to the crossing he could have had full view of the approaching train if he had looked over his left shoulder. At his rate of speed he would need between four and five seconds to go the twenty-six feet. There was no object in view which appears to have distracted his attention. It is highly probable that he did not look during that space of twenty-six feet, but if he did, he must have seen the train. It is important to notice that, according to his testimony, his horses barely stepped one or two steps upon the track and stopped of

their own accord, and then he for the first saw the locomotive just upon them.

*Woodard* v. *New York, Lake Erie and Western Railroad Company* (106 N. Y., 369) is the most recent case to which we are cited. In that case a man crossing six tracks on foot was struck in the back by a kicked car moving upon a switch track that crossed the other tracks. The negligence on the part of the company was clear. But the court said " at any time when within ten or fifteen feet deceased had only to look and pause to be safe." There had been other cars moving in opposite directions which engaged the attention of the deceased; there was much noise from the moving of these cars and from the sounds of bells and whistles. A strong dissent was expressed by the minority of the court, in which these distractions were given prominent place. Such distractions are absent here.

The cases of *Greany* v. *Long Island Railroad Company* (101 N. Y., 419); *Sherry* v. *The New York Central and Hudson River Railroad Company* (104 id., 652), and *Glushing* v. *Sharp* (96 id., 676), were cases in which the persons crossing were charged by the respective defendants with negligence, because they did not look, or, looking, did not give heed.

In the Greany case there were two tracks across the street, one of which was blocked by a standing train. It seems that the plaintiff waited for it to move on, and as it began to move she stepped upon the track between the train and herself, but before the train passed off the street, she was struck by a fast train on the track upon which she stood, and which she obviously might have seen if she had looked in time. But the court thought that the jury could excuse her, partly upon the ground that her attention was naturally engaged by the train which she was waiting to have move out of her way. The factor of distraction or mistaken judgment, induced by the other operations or agencies of the railroad company, greatly aided the plaintiff in the Sherry case. In the Glushing case the gate was raised, and this was considered to be an invitation for the plaintiff to cross the track. In the case at bar the gates were raised, but as they had never been used, the plaintiff does not claim to have trusted to them.

We incline to think in view of the Woodard case, and in the

absence of any circumstance exculpatory of the plaintiff, such as existed in the other cases cited, that we must hold that the plaintiff was not free from contributory negligence. He had ample control of his team and of his own action, was not put off his guard or distracted by any act of the defendant, could easily look, had ample time to do it, and heedlessly exposed himself and property to injury.

The judgment should be reversed and a new trial be granted, costs to abide the event..

FISH and PARKER, JJ., concurred.

Judgment reversed, new trial granted, costs to abide event.