THEODORE L. WILCOX, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Railroad — personal injuries — failure to see an approaching train — does not dis-charge the railroad company from liability for its negligence in omitting signals — a nonsuit, when sustained.*

Although a person approaching a railroad crossing is bound to make all reasonable efforts to see, that a careful, prudent man would make under like circumstances, his failure to see an approaching train does not of itself discharge the railroad company from liability for negligence in omitting the statutory signals.

Upon the trial of an action brought to recover damages for personal injuries sustained by reason of the defendant's alleged negligence a nonsuit should not be granted if in any view of the facts proved a cause of action exists; it is only where the contributory negligence of the person injured is conclusively established that a nonsuit will be upheld.

APPEAL by the defendant, The New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 11th day of November, 1889, upon the verdict of a jury rendered after a trial at the Chemung Circuit, and also from an order entered in said clerk's office on the 20th day of December, 1894, denying the defendant's motion for a new trial made upon a case containing exceptions.

Plaintiff alleged in the complaint that on the 9th of June, 1888, in the city of Elmira, while he was upon Water street, he received injuries occasioned by the negligence of defendant in operating its train of cars, and that he was free from contributory negligence at the time of receiving the injuries, and it is alleged in the complaint that "On the morning of the said 9th of June, the defendant, in violation of its duties, negligently failed and omitted to guard the

said Water street crossing in any proper manner, and negligently failed and omitted to warn travelers upon said street of the approach of the passenger and express train above referred to." And it is specifically alleged that the defendant failed and omitted to ring the bell on the locomotive of the passenger and express train at the proper distance from the said Water street crossing and to keep the same ringing, and neglected to sound the whistle attached to the locomotive of said passenger and express train upon crossing Water street. It is also alleged that the plaintiff was a driver upon an omnibus connected with one of the hotels in the city, and that while in the line of such employment he was engaged in driving the omnibus down Water street and was obliged to pass over the tracks of defendant's railroad where the same crossed Water street, and that while he was attempting to cross defendant's tracks the omnibus which he was driving was struck by the defendant's passenger and express train and the plaintiff was violently thrown therefrom and received the injuries particularly detailed in the complaint and in the evidence given at the trial. The answer of the defendant consists simply of denials of certain allegations of the complaint. When the plaintiff rested no motion for a nonsuit was made, but after the defendant's evidence was in a motion for a nonsuit was made on the grounds: "*First,* that no evidence of negligence has been shown on the part of the defendant. *Second,* that the plaintiff was guilty of negligence which contributed to the accident." The motion was denied and an exception was taken.

*D. C. Robinson,* for the appellant.

*Bacon & Aldridge,* for the respondent.

HARDIN, P. J.:

Appellant's learned counsel contends that the evidence was insufficient to warrant the submission of the question of the defendant's negligence to the jury. Plaintiff when injured was driving an omnibus from the depot towards the hotel about six o'clock in the morning of the 9th of June, 1888, and while crossing the tracks of the defendant, where they intersect Water street in the city of Elmira, the approaching train of the defendant collided with the

omnibus and caused the plaintiff to receive the injuries of which he complains. There are some buildings which obstruct a person's view while passing down Water street from the west until within about fifteen feet of the east-bound track, and the defendant has a bridge built in spans with iron girders over the river, through which bridge the trains of the defendant pass on approaching Water street, and a person in order to observe an approaching train from the east is required to be very near the tracks of the defendant At the time the injury occurred there was no flagman at the crossing nor were the gates operated. It appears by the evidence that the plaintiff stopped his team and looked and listened and did not discover any train and he started on and was struck by the train approaching on the west-bound track. There was some evidence tending to indicate that the train was running at a high rate of speed. The witness Parker says, in speaking of the speed, that it was "between forty-five and fifty miles an hour" when it passed him, and that he stood in the lane between Henry and Hudson streets about 100 feet from the railroad track. Chalker, who was with the plaintiff at the time of the collision, riding on the steps of the Rathbun omnibus, says: "The train was running rapidly." The witness Tubbs, who saw the accident, says the train was "running rapidly." The witness Bancher, who was near the corner of Main and Water streets when the accident occurred, testified that the train "was going very rapidly; * * * when I say the train was running very rapidly I mean very fast. I mean I don't know how many miles an hour, but more rapidly than I have seen trains run through that crossing." The policeman, Powell, testified that the train was moving very rapidly. The witness Fitch testified that he saw the accident, and that the train was "going so fast it could not stop quick." There was evidence given tending to show that at the time, and prior to the accident, the bell was not rung or the whistle sounded. The plaintiff testified: "I didn't hear the bell ringing. All I mean to say is that I didn't hear any bell. I didn't hear any train at all until it came out the end of the bridge, and I saw it, and no whistle." The witness Houts, who had turned down Water street and who saw the train strike the plaintiff's omnibus, says: "I didn't hear the train coming

up to the time that it struck him. * * * Then they rang the bell. I heard no whistle blown. I saw the train strike the bus. I should say the train was running very rapidly. It struck the bus in the rear." The witness Parker says he heard the train below Henry street, and adds: " What I mean to say is the bell was not ringing when it passed me. I was two blocks from the railroad bridge at the time the train passed me, over twelve hundred feet south of the bridge. I was going in the direction of the train." The witness Chalker testified: " I didn't hear a bell or anything else." The witness DeGroat testified that he was on the east side of the railroad near the space going down under the bridge in front of Tuch & Taylor's store, and that he saw the bus coming down Water street and that he stopped there and looked on the bridge. The witness adds: " I heard no bell rung or whistle blown on the train as it came along over the bridge. I stood there listening. There was no bell rung on the bridge." The witness Tubbs testified that he saw the plaintiff drive down to the crossing, within a short distance of the track, and that he stopped and looked both ways to see if he could see a train, and not seeing any he started on, and the horse had got on the west-bound track. The witness adds: " And I saw the train coming out of the bridge. *, * * When I stood there looking at the bus I didn't hear any train of cars coming or see any. * * * It was very foggy on the bridge that morning. The fog hid the approach of the train coming over the bridge from my view about half-way across the bridge, I should think." The police officer, Powell, testified : " I heard nothing but the crash of the bus; didn't hear any bell rung or whistle blown ; " and this witness adds that it was very foggy on the bridge. The witness Fitch, who saw the crash, testified : " I heard no whistle blown or bell rung." In contradiction of the evidence offered by the plaintiff on the subject of the ringing of the bell or sounding of the whistle, the defendant called its engineer and Clark, the fireman, who testified that he himself rang the bell, and also produced the testimony of Mosher, the brakeman, who testified he heard the bell ringing, and also the testimony of Shirley and of Shepard and of Buckley, and when their evidence is looked into it is found to be in opposition to, and in contradiction of, the testimony offered by the plaintiff on the subject of whether the bell was rung or the whistle sounded. The rule laid down

in *Culhane* v. *The N. Y. C. & H. R. R. R. Co.* (60 N. Y. 133) was reviewed and explained in *Greany* v. *The Long Island Railroad Company* (101 id. 419). According to the doctrine laid down in the *Greany* case we think the trial judge was correct in receiving the evidence produced by the plaintiff tending to show that the bell was not rung or the whistle sounded, and that after the evidence contradicting the testimony of the plaintiff's witnesses was received, the trial judge committed no error in holding that a question of fact was presented for the consideration of the jury in respect to whether the bell was rung or whistle sounded, and reasonable precaution taken by the defendant on the occasion of the injuries occurring. Where similar conflicting evidence was made the subject of review in *Greany* v. *L. I. R. R. Co.* (101 N. Y. 423), in the course of the opinion therein delivered by DANFORTH, J., it was said: "A jury must ascertain. An appellate court cannot say that the testimony of either should be rejected. Nor should a trial judge be required to determine its weight, or the fact which it did or did not ascertain, if it has any legal effect." In the course of the charge the trial judge carefully presented the questions of fact, as they were developed by the evidence in respect to the defendant's negligence, to the jury in as favorable language as, in our opinion, the defendant was entitled to have employed.

(2) It is contended by the appellant that "there is certainly sufficient proof of the plaintiff's contributory negligence to bar his recovery as matter of law." It is apparent from the evidence that he was "very thoroughly familiar with all the dangers and circumstances of this crossing and of the manner in which it was operated." However, upon looking into his testimony and the testimony of the witnesses who detailed the facts and circumstances attending the collision, we are of the opinion that the question of whether the plaintiff exercised reasonable care and caution in approaching the tracks at the time of the injuries was a question for the jury to determine. In the case of *Greany* v. *L. I. R. R. Co.* (*supra*) it was held that, although a party is bound to make all reasonable efforts to see, when approaching a crossing, that a careful, prudent man would make in like circumstances, "his failure to see an approaching train does not of itself discharge the company from liability for negligence on its part in omitting the statutory

signal." And in the course of the opinion it was said : "It would be error for a trial court to grant a ' nonsuit if by any allowable deduction from the facts proved a cause of action might be sustained by the plaintiff, and when such ruling has been upheld by reason of the contributory negligence of the person injured, it appeared that such negligence was conclusively established by evidence which left nothing either of inference or of fact in doubt or to be settled by a jury." Citing *Massoth* v. *D. & H. C. Co.* (64 N. Y. 524). (See, also, *Chisholm* v. *The State,* 141 id. 246 ; *Mills* v. *The Brooklyn City Railroad Company,* 10 Misc. Rep. 1 ; *McPeak* v. *N. Y. C. & H. R. R. R. Co.,* 85 Hun, 107 ; S. C., 32 N. Y. Supp. 651, and cases cited.)

Perhaps if the jury had followed implicitly all the facts and circumstances disclosed in the testimony of Tanner and Shepard, a different result might have been reached, but it must be borne in mind that it was the province of the jury to weigh and consider the facts and circumstances disclosed in the testimony of those witnesses in connection with the facts and circumstances disclosed in the testimony of the other witnesses. In fine, it was for the jury to determine whether the plaintiff had exercised reasonable care and caution under the circumstances disclosed by the whole evidence before them.

No other questions are made by the learned counsel for the appellant, and it, therefore, follows from the views already expressed that the verdict should be sustained.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.