QUIROUET *v.* ALABAMA GREAT SOUTHERN RAIL-
ROAD COMPANY.

111　315
f111　713
111　315
p120　1034
e120　1036

1. An employee of a railroad company, who was injured in undertaking to
   mount a rapidly moving flat car by placing his foot upon the lid of the
   journal-box and seizing a standard which had been inserted in an open-
   ing in the side of the car in order to prevent the freight thereon from
   falling off, was not, either under the general rules of law, or any Alabama
   statute, entitled to a recovery on the ground that the standard slipped in
   the socket and caused him to fall, when there was no testimony tending
   to show that the standard was placed on the car as a means of mounting
   the same, but on the contrary positive testimony that it was not placed
   there or intended to be used for that purpose.
2. When an employee has his choice of two ways in which to perform a
   duty, the one safe though inconvenient, and the other dangerous, he is
   bound to select the safe method, and if instead of so doing he elects to
   pursue the dangerous way and is in consequence injured, he is guilty of
   such negligence as will bar an action for damages against the master.
   The principle here announced is recognized law in the State of Alabama.
3. If there was in the present case any evidence tending to show that the
   plaintiff acted in an emergency, it was one of his own making, and the
   defendant company could not be held responsible on the theory that it
   had by its negligence placed him in such a position as to relieve him of
   the duty of exercising ordinary care for his own safety.
4. The evidence demanded a verdict for the defendant, and there was no
   error in directing the jury to find accordingly.

Argued June 15,—Decided July 12, 1900.

Action for damages. Before Judge Calhoun. City court of
Atlanta. January term, 1900.

*Westmoreland Brothers*, for plaintiff.
*Dorsey, Brewster & Howell*, for defendant.

CObb, J. Quirouet brought suit in the city court of Atlanta
against the Alabama Great Southern Railroad Company, a
corporation chartered under the laws of the State of Alabama,
for damages for personal injuries alleged to have been brought
about by the negligence of the defendant. At the trial the
court directed a verdict for the defendant, and the plaintiff ex-
cepted. The case taken in its most favorable light for the plain-
tiff will appear from the following summary of the evidence:
The plaintiff testified that he was employed by the defendant
as a flagman on one of its freight-trains, and that on the occa-
sion on which he was injured the train had entered a side-track

to let a passenger-train pass. After the latter train had gone by, the freight-train backed out from the side-track on to the main line. "He had performed all he was required to do when he turned the switch to let the train back out." The train had a caboose attached with steps to it. The plaintiff sought to mount the fourth car from the caboose. The brakes on this car, which the plaintiff had himself "put on," were causing the wheels to slide and smoke, and his purpose in mounting the car was to release the brakes. When brakes are on so tight as to cause the wheels to slide, there is danger of the wheels bursting and thus causing the train to be wrecked. The journal-box upon which he stepped was sometimes called the grease-box. The wheels of the car are fastened to the axle, and the wheel and the axle both turn. The axle passes through the journal-box, which has a lid on it placed somewhat like the roof of a house, a little slanting. Grease and waste are put in the journal-box to keep it from getting warm. There was no handhold on the car, or other means provided for mounting this car. The train was running at the rate of five or six miles an hour. When the plaintiff attempted to mount the car it was necessary for him to take hold of a large standard, which was on the car for the purpose of preventing the pipes with which the car was loaded from rolling off, and place his foot upon the journal-box, and in this way mount. The standard was so large that he could not grasp it but was required to throw his hand and wrist around it, and as he did so and placed his foot upon the journal-box and threw his weight on the standard it turned with him, threw him down, and threw his foot off the journal-box under the wheels of the car, which passed over his ankle, foot, and leg, and caused him to sustain painful and serious injuries. The socket in which the standard worked was square, and the standard was round and not properly fitted in it, or it would not have turned. The plaintiff further testified that it was the custom of the employees to mount the cars in the way he sought to do, but there was no evidence showing that the company knew of this custom and assented to it. The defendant introduced in evidence a copy of one of its rules in force at the time the plaintiff was injured, which declared that the defendant's employees must not attempt to get on or off trains

while in motion, and that if they did so it would be at. their own peril and risk. Certain statutes of Alabama were introduced in evidence by the plaintiff, the following being so much of the same as are material to the present investigation: "When a personal injury is received by a servant or employee in the service or business of the master or employer, the master or employer is liable to answer in damage to such servant or employee, as if he were a stranger, and not engaged in such service or employment, in the cases following: When the injury is caused by reason of any defects in the condition of the ways, works, machinery, or plant connected with or used in the business of the master or employer. When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal, point, locomotive engine, switch, car, or train upon a railway, or any part of the track of a railway."

1. It is a general rule of law that a servant can not recover of the master for injuries resulting from the use of machinery or appliances for a purpose for which they were not intended by the master, and for which it was not necessary that they should be used, however defective such appliances may be. In undertaking to use an appliance for a purpose for which it was not intended by the master, the servant takes upon himself the risk incident to such use. Wood's Master & Servant, § 402; Bailey, Master's Liability for Injuries to Servant, 22; 1 Shear. & Red., Neg. 346, and numerous cases cited in note 4; *Hamilton* v. *Railroad Co.*, 83 *Ga.* 346; *Richmond & Danville R. Co.* v. *Dickey*, 90 *Ga.* 491; *East Tenn. Rwy. Co.* v. *Reynolds*, 93 *Ga.* 570. This rule is not contravened by the statute of Alabama above quoted, or any statute introduced in evidence, and it will be presumed that the general law on the subject is of force in that State. Applying this rule to the facts of the present case, we do not think the plaintiff would have been entitled to recover on the theory that the standard was defective. The standard was not placed on the car for the purpose of being used by employees in mounting the car. It was placed there to prevent the pipes from rolling off, and was suitable for this purpose. The fact that the standard was round and did not fit the socket, which was square, is not a matter about which the plain-

tiff can complain, unless there was a necessity for him to use the standard for that purpose at that time in order to properly discharge the duties imposed upon him by the master.

2. There was, however, according to the evidence, no such necessity. The car he attempted to mount was the fourth car from the caboose, and the latter could have been easily and safely mounted by steps. This, therefore, was the safer and less dangerous method of reaching the brake which needed attention. Nor was it necessary for the plaintiff to remain at the switch until the caboose had passed, for he testified that he had performed all he was required to do when he turned the switch to let the train back out. While it was more inconvenient, still he could have reached the car by going first upon the caboose or other cars which had appropriate appliances for use in going upon them, and it was his duty to have used the more appropriate and less dangerous method. In such a case, the use of the more dangerous method, even though it be the one of greater convenience, would preclude a recovery if injury results. This principle was recognized by the Supreme Court of Alabama in the case of M. & O. R. R. Co. *v.* George, 94 Ala. 200, cited in *Southern Railway Company* v. *Harbin,* 110 *Ga.* In the Alabama case it was held : "If there are two apparent ways of discharging the required service, one more dangerous than the other, the employee is bound to select the latter, and is guilty of such negligence as will bar an action for damages if he selects the former and is thereby injured."

3. If the locking of the wheel and consequent danger to the train and the failure to mount the caboose or other cars with proper appliances for that purpose brought about an emergency, it was one of the plaintiff's own creation, and he will not be allowed to take any advantage therefrom. See, in this connection, *Briscoe* v. *Southern Railway Co.,* 103 *Ga.* 224.

4. We think there was no possible view of the case which would have justified a recovery for the plaintiff, but that his injuries were the result of his own gross negligence in the premises. There was, therefore, no error in directing the jury to return a verdict in favor of the defendant.

*Judgment affirmed.      All the Justices concurring.*