JAMES H. BENSON *vs.* N. Y., N. H. & H., R. R. COMPANY.

26    405
f27    117

PROVIDENCE—SEPTEMBER· 29, 1904.

PRESENT: Tillinghast, Douglas, and Blodgett, JJ.

(1) *Master and Servant.   Negligence. ' Contributory Negligence.   New Trial.*

Where a brakeman, in the employ of a railroad company, who was engaged in making up a train on a dark night, with an unobstructed passageway between the cars by means of the running-boards, in the absence of any emergency uses the edge of the roof to pass between the cars, with knowledge that both the point from which and to which he leaped were obstructed by grab-irons, and is injured by reason of the·fact that the car to which he leaped had a piece cut out of the roof as a part of its original construction, of which he was ignorant, he is guilty of such contributory negligence as will bar recovery.  ·

(2) *Master and Servant.   Negligence.   Duty to. Follow Safe Course.*

Where an employee has the choice of two ways of performing a duty, the one safe, though inconvenient, and the other dangerous, he is bound to select the safe method; and if, in so doing, he elects to pursue the dangerous way, and is in consequence injured, he is guilty of such negligence as will bar recovery.

TRESPASS ON THE CASE 'for negligence.   Heard on petition of defendant for new trial, and judgment for defendant.

(1)    BLODGETT, J.. Conceding it to 'be established by a preponderance of evidence that cars of the· type of car number 11,487 were not in common use, it is, nevertheless, undisputed that the running-board on car number 12,525 was in proper condition, and that, if the plaintiff had used·it in passing to car number 11,487, the accident could not have happened.   Indeed, this ground of liability ·was considered and·disposed of when this case was before· the court in 23 R. I. at p. 157, the court saying:· "When the plaintiff was advised by his experience of the great diversity existing in the .construction of cars, it seems to us of little importance whether he had seen a freight car of just that make or not, though he admits he knew cabooses were made so.   Using cars of various construction was a risk incident to his employment." ·

. It is also undisputed that there was no emergency requiring the plaintiff to·run near the edge of the roof instead of upon the

running-board in the center of it; nor did he so do by the direction of a superior in authority. He voluntarily chose a portion of the surface of the roof which he admits he knew had obstructions at the point whence he leaped, as well as at the point to which he had leaped on the next car, in the form of grab-irons at each point, when there was an unobstructed passageway between the cars by means of the running-boards; and he alone must bear the lamentable consequences of his act.

(2)    The law is well settled that when an employee has his choice of two ways of performing his duty, the one safe, though inconvenient, and the other dangerous, he is bound to select the safe method; and if, in so doing, he elects to pursue the dangerous way, and is in consequence injured, he is guilty of such negligence as will preclude his recovery. Instances of the application of this rule are given by the U. S. Circuit Court of Appeals for the Eighth Circuit, in *Gilbert* v. *Burlington C. R. & N. Ry. Co.*, decided March 24, 1904, and reported in 128 Fed. Rep. 529, at p. 536, as follows: "An employee rides upon the pilot of an engine when there are cars on which he could ride with safety. He is injured through the negligence of the master, of the effects of which he was ignorant, when he would have suffered no harm if either he or the master had not been guilty of want of ordinary care. He can not recover, because his negligence contributes to the injury, which the unknown negligence of the master concurred to cause. A pedestrian is about to cross a railroad. It is his duty to stop and look and listen before he crosses. It is the duty of the railroad company to ring a bell or sound a whistle to warn him of approaching trains. A train comes without whistle or bell, and gives no warning of its approach. The footman walks onto the railroad without stopping or looking along the track to the right or the left, and he is injured. He can not recover, although he had no knowledge that the train carried no bell or whistle, and that no signal would be given, because his negligence contributed to the injury. A brakeman carelessly jumps onto the brakebeam of a moving car and seizes a handhold not placed upon it to sustain a strain of that character, when there are other handholds for the purpose of enabling

men to climb upon the cars, which he ought to have used.   He is ignorant that through the negligence of the master one of the screws which keeps the handhold he seizes in place does not secure it.   He pulls out the screw, falls, and is injured.   He can not recover, because his negligence directly contributes to his injury.   Indeed, where the plaintiff knows he is exposing himself to great danger, and his negligence directly contributes to his injury, it is not his want of care with reference to the particular negligence or defect that concurs to injure him, but his general breach of duty toward his master, his failure to exercise due care in view of the knowledge which he has, that is fatal to his recovery.   When he knowingly departs from the line of duty, and unnecessarily causes his own injury by putting himself in a place which he knows to be dangerous, it is no excuse for his breach of duty that the place was more dangerous than he supposed it to be, or that he did not know the exact degree of the danger he carelessly incurred.   One who voluntarily and unnecessarily exposes himself to a known and great danger, and thereby directly contributes to his injury, can not escape the fatal effect of his contributory negligence because the negligence of the defendant which concurred to produce the injury, and of which he was ignorant, made the danger greater than he supposed it would be.   *Railroad Co.* v. *Jones,* 95 U. S. 439, 440, 442, 443, 24 L. Ed. 506; *Railroad Co.* v. *Houston,* 95 U. S. 697, 702, 24 L. Ed. 542; *Dawson* v. *Chicago, R. I. & P. Ry. Co.,* 114 Fed. Rep. 870, 52 C. C. A. 286; *Erie R. Co.* v. *Kane,* 118 Fed. 223, 235, 55 C. C. A. 129, 141; *Kresanowski* v. *Railroad Co.* (C. C.), 18 Fed. 229." And see *Quirouet* v. *Alabama Great Southern R. R. Co.* (1900), 111 Ga. 315, and cases cited; *Morris* v. *Duluth S. S. & A. Ry. Co.,* 47 C. C. A. 661, and cases cited; *Union Pacific R. R. Co.* v. *Estes,* 37 Kan. 715; *Moore* v. *Kansas City, Fort Scott & Memphis R. R. Co.,* 146 Mo. 572; *Dandie* v. *So. Pacific R. R. Co.,* 42 La. Ann. 686; *Taylor* v. *R. R. Co.,* 109 N. C. 233.

The remaining general rules applicable were so fully discussed when the case was before the court, in 23 R. I. 147, *supra,* that further discussion of them becomes unnecessary.

Inasmuch as upon the plaintiff's own testimony there can be no recovery, the case will be remanded to the Common Pleas Division, with direction to enter judgment for the defendant.

TILLINGHAST, J., dissenting. I am unable to concur with my learned associates in the foregoing opinion, and, owing to the importance of the case and the previous travel thereof, I feel called upon to state my reasons for the position which I take.

This case has been three times tried to a jury, the first trial resulting in a verdict for the plaintiff for $10,000, the second trial resulting in a disagreement of the jury, and the third and last trial resulting in a verdict for the plaintiff for $16,000.

These trials have been of unusual length, the last one occupying ten days or more, and every phase of the case has been fully and exhaustively presented and tried by diligent and able counsel.

Upon the defendant's petition for a new trial the first verdict was set aside and a new trial granted on the ground of certain erroneous rulings of the trial court, chief amongst which was its refusal to permit the defendant to show that cars constructed like the one which caused the accident, namely, car number 11,487, which had the corners cut out, were in common use on other New England railroads—see opinion by Rogers, J., 23 R. I. 147—the defendant claiming that it could show that cars of similar construction were in common use on other railroads, and hence that the risks incident to the use and management thereof were such as the plaintiff assumed in connection with his employment.

Notwithstanding this claim, however, and notwithstanding that a new trial was granted, mainly, if not solely, on the ground of said erroneous ruling, the defendant has now utterly failed to show that any such cars as that by which the plaintiff was injured were in common use or were used at all on any other New England road, if, indeed, they are used on any other road in the country. Indeed, it would seem to be quite clear from the record that the defendant did not attempt to prove

·on the last trial that any other railroad ever owned or used any platform box cars like the one in question.

Having thus failed to substantiate the position taken by it in its former petition for a new trial, it seems to me that the case now stands practically as it would have stood then with the erroneous rulings eliminated. And, speaking for myself only, I then felt that the only ground upon which the defendant was entitled to a new trial was the erroneous ruling complained of. And, had the court as then constituted taken the view which is now taken by the majority, that the plaintiff upon his own showing is not entitled to recover in any event, it hardly seems probable, to say the least, that the case would have been remanded for a new trial, as the evidence was practically the same then as now.

Whether the plaintiff was guilty of contributory negligence in attempting to step from the roof of one car onto that of another, without using the running-board, was, under the circumstances, a question of fact for the jury; and they have decided that question in the negative. Two juries have thus decided it. And, after two concurring verdicts upon this question, which is really the only question in the case—the defendant's negligence in using such a dangerous car being abundantly proved—I fail to see how, under the well-settled doctrine of this court, and such is the doctrine of the other courts of last resort both in this country and in England, a judgment can now be directed in opposition thereto.

In *Steadman* v. *Wilbur*, 7 R. I. 481, Chief Justice Ames used the following language, which is pertinent to the case at bar: "After two full trials in this court by impartial juries, in which verdicts were rendered for the defendants, we certainly shall not open this case for a new trial, without strong proof that justice imperatively demands it."

In *Clarke* v. *Electric Lighting Co.*, 16 R. I. 463, Chief Justice Durfee, in speaking of the question of contributory negligence, said: "Generally, the question of negligence is a question of fact to be determined by the jury; but sometimes, when there is no controversy as to the facts, and when it clearly appears from them what course a person of ordinary prudence would

pursue, it is a question for the court. So, when the standard of duty is fixed, or when the negligence is clearly defined and palpable, the court will not leave the case to the jury. But cases of this kind are few, and are generally cases in which the situation is so simple that any person of ordinary prudence would instantly perceive what to do or what to refrain from doing. . . . But where the facts are complicated or extraordinary, the case is usually left and properly left to the jury. So, whether the facts be disputed or not, if they are such that different minds, fairly considering them, might draw different conclusions from them, the question of negligence is for the jury."

That the facts in the case at bar were such that different minds, fairly considering them, might draw different conclusions therefrom is fully illustrated by the travel of the case as above set out. There was no fixed standard of duty devolving upon the plaintiff in the premises, and hence it was for the jury to say whether his conduct was that of a reasonable, prudent man under the circumstances. *Lebeau* v. *Dyerville Manufacturing Co.,* 26 R. I. 34.

In *York* v. *Railroad Co.,* 84 Me. 117, the court said: "The standard of duty is what thoughtful, prudent men, mindful of themselves and of others, might reasonably be expected to do or not to do under all the circumstances of the particular case. The type is not the very prudent, the very circumspect man, but the man who answers to the popular conception of a prudent, reasonable man. The thing to be done or left undone is what would seem to such men to be suggested by all the appearances, probabilities, and other circumstances of the time, place, and events.

"All such circumstances may be undisputed, and in such case the only question is whether the act or omission under consideration comes up to the above stated legal standard of duty, or falls below that standard and into the class of negligent acts or omissions. In our system of jurisprudence the determination of this last question is within the province of the jury. Not only is it the duty of the jury to ascertain what was done or omitted, and all the attendant circumstances, but

it is also the duty of the jury to determine whether under all those circumstances the act or omission was up to the standard or was negligent.  The theory is, that twelve men of the average of the community, conversant with everyday affairs, and with what men do and don't, do; more or less familiar in their own experience with similar circumstances and conditions and with  the usual conduct of men under them—coming together into consultation from various modes of life, occupations, and points of view—and applying  their separate experiences and observations, can by their unanimous conclusion, form  the  best  attainable  judgment  upon  such  a  question. Twelve men of affairs, such as juries are supposed to be composed of, would naturally have a wider experience, and broader observation in such matters, than any single judge however learned. . . . The question for us now is not whether in our opinion this conclusion reached by the jury is right.  We may not ourselves. think it right, but such an opinion alone would not authorize us to reject the jury's judgment.  The question for us is, whether this conclusion, this judgment, could be arrived at by fair-minded men by any reasonable inference from the evidence, even though other and contrary inferences might seem to us more reasonable."

The late Chief Justice Cooley, who had no superior as an authority on the law of torts, in delivering the opinion of the Supreme Court of Michigan in the important case of *Detroit etc. Ry. Co.* v. *Van Steinburg,* 17 Mich. 99, in speaking of the question of contributory negligence, said: " When, therefore, the plaintiff offers no evidence that he was in the exercise of care, but on the contrary the whole evidence on which his case rests shows that he was wanting in due prudence, the court, it is held, may rightfully instruct the jury, as a matter of law, that the action can not be maintained. . . . The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility.  For when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man

ought to have done under the circumstances.   He thus makes
his own opinion of what would be generally regarded as pru-
dence a definite rule of law.   It is quite possible that if the
same question of prudence were submitted to a jury collected
from the different occupations of society, and perhaps better
competent to judge of the common opinion, he might find
them differing with him as to the ordinary standard of proper
care.   The next judge trying a similar case may also be of a
different opinion, and, because the case is not clear, hold that
to be a question of fact which the first has ruled to be one of
law.   Indeed, I think the cases are not so numerous as has
been sometimes supposed in which a judge could feel at liberty
to take the question of the plaintiff's negligence away from the
jury.   The judge, it is said in one case, is not bound to submit
to a jury the propriety of a particular course, when it is per-
fectly notorious that all prudent men conduct their own affairs
differently.   The uniformity of the conduct of business men
becomes a rule of law.

"But while there is any uncertainty, it remains a matter of
fact for the consideration of the jury.   .   .   .

"It is a mistake, therefore, to say, as is sometimes said,
that when the facts are undisputed the question of negligence
is necessarily one of law.   This is generally true only of that
class of cases where a party has failed in the performance of a
clear legal duty.   When the question arises upon a state of
facts on which reasonable men may fairly arrive at different
conclusions, the fact of negligence can not be determined until
one or the other of those conclusions has been drawn by the
jury.   The inferences to be drawn from the evidence must
either be certain and incontrovertible, or they can not be de-
cided upon by the court.   Negligence can not be conclusively
established by a state of facts upon which fair-minded men
may well differ."

In *Baltimore, etc., R. R. Co.* v. *the State, etc.,* 72 Md. 36, the
court said: "To justify a court in saying that conduct is
*per se* contributory negligence, the case must present some such
feature of recklessness as would leave no opportunity for

difference of opinion as to its imprudence, in the minds of ordinarily prudent men."

See also the late case of *Baltimore, etc., R. R. Co.* v. *Jean* (57 Atl. Rep. 540), decided January 20, 1904.

The Court of Appeals of New York, in a long line of decisions, takes the same view of the question of contributory negligence as that stated above.   I will refer only to the case of *Greany* v. *Long Island Railroad Co.*, 101 N. Y. 423, as illustrating the rule as laid down by that court.   In that case, Danforth, J., in delivering the opinion of the court, said: "It would be error for a trial court to grant a nonsuit if by any allowable deduction from the facts proved, a cause of action might be sustained by the plaintiff; and when such ruling has been upheld by reason of the contributory negligence of the person injured, it appeared that such negligence was conclusively established by evidence which left nothing either of inference or of fact, in doubt, or to be settled by a jury."

The Supreme Court of the United States, in reversing the judgment of the Circuit Court in the case of *Jones* v. *Railroad Co.*—see 128 U. S. 443—emphasizes the same view in the following language by Mr. Justice Miller: "But we think these questions (of negligence) are for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as this as well as others. . . . Instead of the course here pursued, a due regard for the respective functions of the court and jury would seem to demand that these questions should have been submitted to the jury, accompanied by such instructions from the presiding judge as would have secured a sound verdict."

In the case of *Grand Trunk Railway Co.* v. *Ives*, 144 U. S. 409, 417, the court said: "It is only where the facts are such that all reasonable men must draw the same conclusions from them, that the question of negligence is ever considered one of law for the court."   See the cases cited in support of this doctrine.

In *Gill* v. *Middleton*, 105 Mass. 477, the court said: "The question of reasonable care must always depend on the special

circumstances of each case, and is almost of necessity a question of fact rather than of law."

In Beach on Contributory Negligence, 3d ed. revised, § 450, the learned author says: "Whenever there is any doubt as to the facts, it is the province of the jury to determine the question; or whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts it is likewise a question for the jury. It belongs to the jury not only to weigh the evidence and to find upon the questions of fact, but to draw conclusions as well, alike from disputed and undisputed facts."

These propositions are so abundantly sustained by the authorities that it would be a waste of time to refer to them more specifically. Suffice it to say that the number of cases which sustain the position which I have taken as to the question of contributory negligence is legion. And under these authorities, it seems to me, that, by fixing a legal standard of duty in a case of this sort, the court is invading the province of the jury.

The cases cited by my learned brethren in support of the majority opinion, even conceding that they were all rightly decided, fail to sustain the position taken, because of the dissimilarity between the facts in each of those cases and those in the case at bar. And hence, to my mind, they are clearly distinguishable, and not controlling.

The accident by which the plaintiff was injured occurred in the nighttime, while he was occupied as hind brakeman in making up a train of freight cars. The night was dark and stormy, the cars were passing through a covered bridge the approaches to which were protected by a tell-tale which was a warning to brakeman that it was dangerous to stand erect on top of the cars, and every brakeman called by the plaintiff as a witness testified that the running-board, being the highest part of the car, was the most dangerous place to stand upon when passing through a covered bridge.

The plaintiff's duty was to give signals to the engineer and switchman as to the movement of the cars, and the undisputed evidence shows that these signals can not be given from the

running-board, but that the brakeman must be on the roof of the car and near to the edge thereof in order to be able to see and signal to the persons named.   The plaintiff had just performed this duty and was hastening towards the west end of the train in the further discharge of his duty, when, in attempting to step from the car which he was on to the next one, he fell into the opening which had been cut out of the hood of that car and was thrown beneath the wheels and lost his leg, besides being otherwise seriously injured.

It was a most common thing for all of the brakemen to pass from car to car, when engaged as the plaintiff was, without returning to the running-board, as they could thus do their work more expeditiously, and, in their judgment, more safely, while under the bridge.

The plaintiff testified that he had never seen a platform box car with the corners cut out, and a number of brakemen and other employees who had worked upon the New Haven system prior to the accident testified that they had never seen such a car.

In view of these facts, and of all the other facts appearing in the case, for the court to say, as matter of law, that the plaintiff was guilty of contributory negligence, and hence can not recover, is, to my mind, clearly wrong, and therefore, with all due regard for the opinion of the majority, I must dissent therefrom.

As the plaintiff is to receive nothing for the damages sustained by him, there is no occasion for me to express any opinion as to whether the damages assessed by the jury at the last trial of the case were excessive, and I therefore express none.

*John W. Hogan and Philip S. Knauer,* for plaintiff.

*David S. Baker and Lewis A. Waterman,* for defendant.