# Illinois Central R. R. Co. v. Thomas C. Cozby, Adm'r.

1.  INSTRUCTIONS—*References to the Declaration.*—In an action on the
case for personal injuries upon a declaration sufficient in law, it is
proper to instruct the jury that if they believe from the evidence that
the deceased was killed in manner and form as charged in the declara-
tion, while in the exercise of due care and caution for his own safety,
and engaged in the discharge of his duty to his employer as a switch-
man, they should find for the plaintiff and assess his damages, etc.

2.  SAME—*Not Shown by the Abstract.*—An instruction not shown by
the abstract can not be considered by the court.

3.  EVIDENCE—*Of the Exercise of Ordinary Care.*—In the absence of
direct and positive testimony, the fact that a deceased party was not
guilty of negligence may be proved by reasonable inferences from his
habits, and the circumstances surrounding him at the time of his death,
as shown by the evidence.

4. ORDINARY CARE—*How Shown in the Absence of Direct Testimony.* —In determining the question as to whether a deceased person was in the exercise of ordinary care at the time of an accident which resulted in his death, the jury may in the absence of direct testimony consider the fact, if shown by the evidence, that the deceased was bright, sober, zealous and careful, and that he was bound to life and to the exercise of care for its preservation by family ties, etc.

5. NEGLIGENCE—*Railroads—Construction of Track.*—It is negligence in the construction of its track by a railroad company to permit spaces between the ties to remain unfilled at places where there are no movable switches requiring such unfilled spaces.

6. HUSBAND AND WIFE—*Power of the Husband to Limit the Wife's Recovery by Contract.*—The value of the interest of the wife and children in the life of the husband and father, and the amount of their financial loss in case of his death, is fixed by the statute, and it is wholly beyond the power of the husband and father to alter or abridge their right of recovery by any contract which he may enter into.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Alexander County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the August term, 1896. Affirmed. Opinion filed March 3, 1897.

WILLIAM H. GREEN, attorney for appellant.

WILLIAM N. BUTLER, attorney for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Appellant urges that the court erred in giving appellee's first instruction. This instruction tells the jury that if they believe from the preponderance of the evidence that the deceased was killed in manner and form as charged in the declaration, while in the exercise of due care and caution for his own safety and engaged in the discharge of his duty to appellant as a switchman, then the jury should find for the plaintiff, and assess his damages at such an amount as the widow and heirs of the deceased had sustained.

It is said that this instruction does not make negligence on the part of appellant a prerequisite to recovery. But the instruction refers to the declaration, and the declaration sufficiently charges that the negligence of appellant was the

cause of Craiglow's death.    But even if the instruction is not sufficiently definite in this particular, this lack of definiteness is more than compensated for by the numerous definite instructions given for appellant on this branch of the case. No one can read the whole charge to the jury without being made to understand that appellee could not recover except upon proof that appellant was negligent as charged in the declaration, and that this negligence was the proximate cause of the injury.    Under the circumstances there was no error in giving this instruction to the jury.

The instruction to find for appellant is not in the abstract, and hence should not be considered under the repeated rulings of this court.    However, as we must pass upon the evidence, the refusal to give the instruction must also be passed upon in effect; for, if the evidence is sufficient to sustain the verdict, the instruction should not have been given, and if the evidence is not sufficient the judgment must be reversed, in which case it makes but little difference whether the ground of reversal is that the verdict is against the evidence or that the instruction should have been given.

The field is now clear for the consideration of three propositions, urged with much ability on one side, and controverted with equal ability on the other, that is to say, that the deceased was not in the exercise of ordinary care when he was killed, that the defendant was not guilty of the negligence charged in the declaration, and that the contract between appellant and Craiglow is an effectual bar to an action for damages for the use of the widow and heirs.

First, as to the question of Craiglow's contributory negligence :

Craiglow was killed while endeavoring to uncouple cars which were moving at the rate of two or three miles an hour. There was no eye witness of what occurred while he was between the cars endeavoring to withdraw the link.    Therefore, it is said, there is no proof, and there can be no proof, that Craiglow was in the exercise of ordinary care at the time of the injury.

It appears that one clause of the rules furnished Craiglow

I. C. R. R. Co. v. Cozby.

when he entered into the service of appellant warned him of the danger of coupling and uncoupling moving cars, and positively forbade such an act.    The sentence immediately preceding this, however, authorized him to couple or uncouple moving cars if they were not moving at a danger-ous rate of speed.    In this and other respects, the rules are contradictory and misleading.    If the switchman should be hurt, it could be said, "My dear sir, you were forbidden by the rules to uncouple moving cars."    If, through excess of caution, he should stop every train before uncoupling cars and thus retard and embarrass business, it could be said : " The rules require you to uncouple moving cars when they are not moving at a dangerous rate of speed."

The evidence shows that it was the custom to couple and uncouple moving cars in the Cairo yards.    This practice was certainly known to the railroad authorities, and was not discouraged by them, except in this contradictory man-ner on paper.    It is manifest that in extensive yards, where much switching is to be done, the business of a railroad company could not be transacted, if every train was brought to a dead halt in order that cars might be coupled or uncoupled.    We can not hold that Craiglow was necessa-rily guilty of negligence because he undertook to uncouple cars which were moving at the rate of two or three miles an hour.

The evidence shows that Craiglow was an experienced railroad man; that he was sober and temperate—very care-ful—possessed of all his faculties—an extraordinarily bright young man—zealous in his labors for his employer—anxious to protect himself.    The evidence further shows that he had a wife and child, and that his wife was soon to become a mother again.    He was earning ninety dollars a month at the time of his death.

In the face of these undisputed facts we are asked to hold that there was no evidence upon which the jury could base a finding that Craiglow was in the exercise of ordinary care when he was killed.    The fact that he was bright, sober, zealous and very careful is to count for nothing.    The fact

that he was bound to life, and to the exercise of care for the preservation of life, by the strong tie of love for wife and child is to be wholly ignored. It is to be presumed that he recklessly threw himself beneath this train of cars because, forsooth, no eye witness swears that he did not do so.

This is not the law. In the absence of direct and positive testimony on the subject, the fact that Craiglow was not negligent could be proved by reasonable inferences from his habits and the circumstances surrounding him as shown by the evidence. It was a question for the jury to decide, and with the decision of the jury we are satisfied. C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; Missouri Furnace Co. v. Abend, 107 Id. 44; T. H. & I. R. R. Co. v. Voelker, 129 Id. 540; B. & O. S. W. Ry. Co. v. Then, 159 Id. 535.

Second, as to appellant's negligence:

Craiglow was killed in appellant's yards at Cairo, where there were many switchstands, and where there was much switching to be done. He had been working in these yards for about fifty days. But the yards were extensive, and repairing was constantly going on, and it was well nigh impossible for any switchman to keep himself fully imformed as to the condition of the tracks at every point.

The accident occurred at what is called the "stub" end of a feather rail, which was fastened by a bolt to the tie so as to allow the other end of the rail to be moved for the purpose of transferring cars from one track to another. The spaces between the ties underneath this rail were unfilled, but this is excused on the ground that the rails with the connecting bridles could not be moved if the spaces were filled. Let this be granted, and yet the evidence is sufficient to establish the negligence charged in the declaration.

The evidence shows that for several feet north of the stub end of the feather rail, the spaces between the ties were unfilled to a depth of from two to six inches. Appellant's own evidence shows that a depth of three inches

would be "bad railroading," or, in other language, negligence. There was no movable switch, requiring unfilled spaces, immediately north of the rail in question.

The evidence justified the jury in finding that, while Craiglow was walking along between the cars of the moving train, using his best endeavors to withdraw a stubborn link, his foot was caught near the north end of the feather rail by reason of appellant's negligence in leaving the spaces north of the feather rail unfilled, and that he was, as a consequence thereof, thrown upon the track and instantly killed. The finding of the jury does not depend solely upon the testimony of witnesses, but is fortified by what the jurors themselves saw while making an examination of the track at appellant's request during the progress of the trial. Stockton v. City of Chicago, 136 Ill. 434; C., B. & Q. R. R. Co. v. Burton, 53 Ill. App. 69.

Third, as to the contract between appellant and Craiglow.

This contract refers to, and is based upon, the rules furnished Craiglow by appellant. Some of these rules are contradictory, as has already been shown. Some of them require what would be practically an impossibility without greatly hindering or embarrassing appellant's business. Consider, for example the requirement that, before a switchman shall couple or uncouple cars, he must "examine and see that the cars or engines to be uncoupled or coupled, the pins, links, drawheads, and other appliances connected therewith, the ties, rails, tracks and road-bed, are in a good, safe condition, and that the cars are so loaded that such work may be safely done." This requirement is absurd. Doubtless the railroad authorities did not expect that it would be literally observed. And the contract based upon these rules is broad enough in its terms to free appellant from liability for gross negligence, against which a common carrier is not permitted to contract under the decisions of the courts. Arnold v. I. C. R. R. Co., 83 Ill. 273; J. S. E. Ry. Co. v. Southworth, 135 Id. 250.

But it is not necessary to rest the decision of this question upon the ground that such a contract is against public policy and therefore void. It is sufficient to say, upon the author-

ity of Naney v. C., B. & Q. R. R. Co., 49 Ill. App. 105, that the wife and child of the deceased had an interest in the continuation of his life which he could not take away from them by contract. The reasons for this rule of law are forcibly stated by Mr. Justice Boggs in the opinion in the Naney case, in which the right of the widow and children in cases like this is treated as a property right vested in them by the enactment of the legislature. "Neither argument nor authority," says the judge, "would seem to be necessary to sustain the view that the widow and next of kin can not be deprived of the property right so created and vested in them, at the will or pleasure or by the contract of another, though he be the party charged with the performance of duties out of which the right grew."

And again: "The value of the interest of his wife and children in his life, and the amount of their financial loss in case of his death, is limited by statute, and it was wholly beyond his power to further limit their right of recovery by any contract he might enter into."

If the husband can not limit the amount of the recovery, much less can he take away the right of recovery altogether.

We are satisfied with the verdict of the jury, and the judgment is hereby affirmed.