JARVIS *v.* FLINT & PERE MARQUETTE RAILROAD CO.

1. PLEADING—VARIANCE—APPEAL.

An objection that there was a variance between the declaration and the proofs, and that a recovery was permitted for a different defect than that alleged in the declaration, will not be heard on appeal, where no objection was made to the evidence, and no misunderstanding existed as to the questions involved.

2. TRIAL—INSTRUCTIONS.

The refusal of an instruction is not error where the subject-matter is fully covered by the general charge.

3. INJURY TO BRAKEMAN—VIOLATION OF RULES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Plaintiff, an experienced brakeman, and familiar with defendant's road, attempted to uncouple cars moving on the main track at from four to five miles an hour. It was dark, and he ran along on the track between the cars while doing the uncoupling. As he started to go from between the cars he stepped into a hole in the roadbed, and was injured. Defendant's testimony tended to show that this excavation was at a switch, and was necessary to enable it to be operated; while plaintiff's testimony was to the effect that the hole was several feet distant from the switch. The rules of the company made it the duty of employés to examine the track where they were required to perform a service, and to satisfy themselves, so far as they reasonably could, as to its safety, and forbade them to enter between cars in motion to couple or uncouple them, except under favorable conditions, such as low rate of speed, absence of frogs, switches, etc., and where good footing could be obtained, and then only when necessary. *Held,* that, if plaintiff's contention as to the place of the accident was the true one, the question of his contributory negligence was for the jury.

4. APPEAL—RECORD—INSTRUCTIONS—PUNCTUATION.

The punctuation of the stenographer's notes of an instruction to the jury will not be allowed to alter the plain meaning of the language employed.

Error to Saginaw; Beach, J. Submitted May 8, 1901. Decided July 19, 1901.

Case by William Jarvis against the Flint & Pere Marquette Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*Benton Hanchett*, for appellant.

*William F. Denfeld* (*James H. Davitt*, of counsel), for appellee.

LONG, J. This action is brought to recover for injuries received by the plaintiff, a brakeman, while engaged in uncoupling cars on defendant's road at Flint on the evening of March 13, 1899. Plaintiff was about 30 years of age, and had had 10 years' experience as a brakeman before going into defendant's employ. He commenced work for the defendant about the middle of December, 1898, and worked continuously on the road between Saginaw and Plymouth, going out from Saginaw one day, and returning the next day, and generally on the return trip did switching where the accident occurred. He was the head brakeman, and the train was under his control. At the place where the accident occurred, the main track of the railroad extends north and south. On the east side of the main track is a side track running parallel with it. On the main track are two switches, from 25 to 28 feet apart. One leads to the north, connecting with the side track; the other leads to the south, also connecting with the side track. In the train upon which the plaintiff was working, five cars were to be taken out and run over the south switch, and placed upon the side track. These cars were uncoupled from the train, leaving the other cars, forming the rear of the train, with the caboose, on the main track south of the south switch. The train, with the five cars which were to be cut off, was moved forward north of the north switch, and then was backed down to go over the two switches, in order to leave the five cars on the side track south of the south switch. The conductor and the plaintiff were standing about a car's length north of the north switch, on the east side of the track (that is,

on the right-hand side of the train, looking towards the engine), and, as the train moved back to where they were, the conductor pointed out to the plaintiff the place in the train—between what cars of the train—the uncoupling was to be made. The plaintiff proceeded to do the uncoupling by going between the cars while they were moving at a speed of four or five miles an hour, and, in doing the work, he was run over by the cars and injured.

His statement as to the manner of the injury is that, when the conductor pointed out the place in the train at which the uncoupling was to be made, he was about a car's length north of the north switch; that he immediately attempted to pull the pin and make the uncoupling, and in doing that ran along on the outside of the rail until near the north switch; then went inside, and got onto the brake-beam, and rode on it, trying to pull the pin, until he was past the north switch; that he then got down onto the ground between the cars, and ran along at a slow trot between the rails, trying with his right hand to pull the pin, holding his lantern in his left hand, down near the pin; that the night was dark; that the two cars between which he was going were about three feet apart; that the bottom of the cars was about as high as his thigh; that, just before reaching the south switch, he got the pin out, and went to go from between the cars, and stepped his left foot into a hole beside the east rail, said hole being between the cars, and stumbled; that he tried to catch onto something upon the car ahead of him, but could not do so, and fell across the center of the track, and was injured so that he lost one foot, and one hand was badly hurt. It appears, further, from his testimony, that he did not see the hole into which he stepped, and that he is unable to locate it definitely, except that he says it was beside the east rail and between the switches, and was between the cars; that his feet went down into a hole when he stumbled; that this hole was 12 to 14 inches outside the rail of the main track.

Mr. Frank E. Penny was a brakeman on the same train

that night. He testified that he found the plaintiff after the accident a few ties north of the south switch; that he was a few ties—maybe a tie or two—north of the switch; that he noticed the condition of the tracks; that he found cinders between the north and south switch; that it looked to him as if the sectionmen had been working on them; that they were excavating out there to a certain extent,— that is, north of the south switch; he did not know how many ties, but, anyway, six or seven or eight. Conductor McDowell testified upon this point that he saw the plaintiff stumble possibly 20 feet south of the north switch, not south of the south switch; that plaintiff was between the two switches.

The defendant introduced testimony tending to show that there were no piles of cinders there, and that the only excavation or hole on the main track was at the switch, where it was necessary to have a trench for the purpose of drainage; that the dirt and cinders were cleaned out from between the ties so that the switch could be moved. It is undisputed that it was necessary to maintain this condition between the ties at the place where the south switch was located, so that the bars of the switch could move backward and forward between the ties; that the unfilled space between the east ends of the same ties, and the trench to the east from those ties, were necessary for the drainage of the switch; and that these conditions were continuous.

The cause of the accident, as alleged in the first count of the declaration, was a hole or rut into which the plaintiff stepped, as follows:

"At a point, to wit, 300 feet south of where Hursley street, in the city of Flint, crosses the main track of said company, and at the switch located at that point on said main track, where it became necessary for plaintiff to uncouple the said cars, and along the outside and next to the east rail of the main track of said switch, located as aforesaid, there existed a deep hole or rut, and piles of dirt and cinders at said point, and the same had existed a long time previous thereto, and plaintiff did not see the same;

and, as the cars were uncoupled by him, plaintiff stepped out from between the cars so uncoupled, and into the hole, along the outside and under the east rail at the point aforesaid."

The second count states:

"Said defendant carelessly and negligently allowed its road to be and remain out of repair for a long time, to wit, for a period of a year, prior to the happening of the injury herein complained of, in that it allowed a large hole or rut, into which plaintiff stepped, and piles of dirt and cinders, as set out in the first count, to be and did remain close up to the outside of the rails, and between the rails, of said main track, for said period. And on the 13th day of March, when it became necessary to place said freight-train cars on the said side track as aforesaid, it became necessary for said plaintiff to go between two of said cars of said freight train to uncouple the same while in motion; and, just as said plaintiff had uncoupled said cars' from said train, he stepped out from between them and into said hole, close up to the outside east rail of said main track, and in the bed of said road, which was about six or eight inches in depth, and into which hole he stumbled, and fell across the main track, just where the side track connects with said main track."

The court, in its charge to the jury, after stating the action of the plaintiff in going between the cars at the direction of the conductor, said:

"He claims that the hole that he stepped into was a short distance north of the south switch. It is further claimed by the plaintiff that there was a pile of cinders, dirt, gravel, or snow along the outside of the east rail of the track, and within a short distance of such east rail. * * * It is further claimed by the plaintiff that the cinders or ballast was taken from between the railroad ties just north of the south switch to a depth of three or four inches; that the ties at that point were one foot apart, and in some places not that distance, but that they were far enough apart so that a man's foot could be caught between the ties; that those were the conditions as they existed on the main track. The plaintiff's claim is that he did not consider it dangerous to make the uncoupling when the train was in motion, running at a rate of speed

128 MICH.—5.

of from four to five miles an hour, as he knew nothing about a hole existing where he claims he was injured, but supposed it was a safe place to work, and that he did not in any way contribute to the injury.

"The defendant's claim is that at the point where the plaintiff claims he was injured, and between the two switches, there was no hole between the ties, on the outside or between the rails; that dirt, gravel, or cinders were filled in between the ties, and that the track was ballasted even with the ties, except at the split switch, where the dirt had to be taken from under the draw-bars between the ties so the switch could be operated; that a small ditch, about three inches deep and about one foot wide, extended from the ends of the ties near the switch to the rails on the west side, so as to drain the water off, so it would not freeze or obstruct the operation of the switch; that this drain was cleaned out, and the dirt carried away; and that there was no pile of cinders, dirt, snow, or ice either upon the east or west side of the track. It is further claimed that the way the plaintiff was injured was by his getting upon the drawbars between the cars, and that, when the cars were uncoupled, the plaintiff fell between them, and was injured; * * * and that, if he fell into a hole, it was at the split switch, and was thrown down, but was not thrown down by stepping into a hole north of the switch. These are questions of fact for you to consider, and not for the court."

We think this was a fair statement of the controversy between the parties. The plaintiff claimed that the hole existed some little distance north of the south switch, while defendant contended that no hole existed there, and, if there was any hole at all, it was at the switch, and was necessary for its drainage.

But defendant's counsel contends that the case which was presented for trial, and which defendant was called upon to defend, was an alleged defect in defendant's road, which was distinctly described and identified by the declaration, but that by the charge of the court recovery was allowed for an entirely different defect. We think this contention cannot be sustained; but, even if there were a variance between the declaration and the proofs, we think the defendant cannot now be heard upon the objection it

makes.   The controversy between the parties during the whole trial was whether a hole existed north of the south switch.   No objection was made by defendant's counsel to the introduction of any evidence under the declaration. The case was tried on the theory that the declaration alleged that the hole existed at some distance north of the south switch.   Defendant's counsel was not taken by surprise on the trial when the proofs were offered locating the hole into which plaintiff stepped as at some distance north of the south switch.   Had counsel at that time raised the question of variance between the proofs and the declaration, the court undoubtedly would have permitted plaintiff to amend his declaration.   *Ross* v. *Township of Ionia,* 104 Mich. 320 (62 N. W. 401); *Grattan* v. *Village of Williamston,* 116 Mich. 462 (74 N. W. 668).

Several requests were asked by the defendant in reference to the location of the hole, among which was the following:

"If the evidence does not show that the plaintiff's injury was caused by his stepping into a hole at that place [that is, a hole located outside of the east rail, at a switch leading from the main track of defendant's road], the verdict should be for the defendant.   The evidence must show the manner in which the plaintiff was injured, or there can be no recovery.   The jury are not permitted to guess or conjecture as to the manner in which the plaintiff's injury was caused."

This request was refused, and the court charged the jury:

"It was the duty of the defendant to provide a reasonably safe place for the plaintiff to do his work in, and, if you find by a preponderance of the evidence in this case that the defendant failed to keep the track at the place where the plaintiff claims he was injured in a reasonably safe condition, then the defendant is liable, and your verdict should be for the plaintiff, unless you find that the plaintiff in some way contributed to the injury.   *   *   * In determining the question of carelessness and negligence on the part of the plaintiff, the jury will take into consideration all the facts and circumstances proven, including the

condition of the track between the two switches described by the witnesses at the place where the plaintiff claims that he was injured, and also what it is claimed he said to the other witnesses.   *   *   *   If you should find that the track north of the switch was not ballasted even with the top of the ties, or that there was an excavation or hole, as claimed by the plaintiff, he cannot recover, unless you further find that he was free from negligence; and he must satisfy you of these facts by a preponderance of the evidence.   *   *   *   But it is claimed by the plaintiff that he was not injured at the switch, and that the hole in which he claims his foot was caught, and threw him under the car, existed along the main track north of the switch. If this is true, then it was not a risk which the plaintiff assumed, and he is not precluded from recovery upon that ground, providing you find that he is free from negligence."

We think there was no error in the refusal of the request, as the court fully explained the contentions of the parties.

Defendant's attorney asked the court to charge the jury:

"The railroad company's rules provided that, before exposing himself to danger, it was the plaintiff's duty to examine the condition of all machinery, tools, cars, engines, or track that he was required to use in the performance of his duties, and to satisfy himself, so far as he reasonably could, that they were in safe working order, and that it was the plaintiff's right and duty to take sufficient time to make such examination, and to refuse to obey any order which would expose him to danger.   The rules further provided that entering between cars and engines in motion to couple or uncouple them should never be done except under favorable conditions, such as low rate of speed, absence of frogs, switches, guard rails, etc., and where good footing could be obtained, and then only when necessary.   The evidence shows that Mr. Jarvis did not obey this rule, and the verdict should be for the defendant."

The court charged the jury on this point:

"The defendant provided the plaintiff with rules for his guidance and direction, and it was his duty to follow the

instructions given. One of these conditions is that it was the plaintiff's duty to examine the condition of all machinery, tools, cars, engines, and track that he was required to use in the performance of his duty, and to satisfy himself, so far as he reasonably could, that they were in safe working order, and that it was the plaintiff's right and duty to take sufficient time to make such examination, and to refuse to obey any order which would expose him to danger; and if you find from all the evidence in the case, and the surrounding circumstances, that the plaintiff did not take sufficient precaution in doing his work, he is not entitled to recover; but in considering these questions you are to take the surroundings as they were, and as they have been testified to by all of the different witnesses. Did plaintiff act as a prudent and a cautious man would under like circumstances? * * * The rules further provide that entering between cars and engines in motion to couple or uncouple them should never be done except under favorable conditions, such as low rate of speed, absence of frogs, switches, guard rails, and where good footing could be obtained, and then only when necessary. It is for you to determine, from all the evidence and circumstances in the case, whether the plaintiff violated the rules or not, keeping in mind the rules that were offered in evidence and read to you; and, if you find that he did not, he is not precluded from recovery upon those grounds. Plaintiff was not compelled to enter between the cars to make this uncoupling from anything that the conductor might have said to him, as the testimony in this case shows that the train was under his direction when he attempted to make the uncoupling. It is for you to say, from all the testimony and circumstances in the case, whether he exercised that care and precaution that a prudent person would in uncoupling the cars as he did, and at the place he did."

It is contended by defendant's counsel that the testimony is undisputed that the plaintiff disobeyed these rules. If the plaintiff's testimony and the testimony of his witnesses be true, that the hole existed outside of the rail of the track north of the south switch, and plaintiff was injured at that place, and not at the switch, as contended by defendant, we think the court was not in error in his charge in reference to these rules. It would have

been negligence on the part of the company to leave a hole at the point in the track or roadbed where the plaintiff contends he was injured; and we think it was a question for the jury to determine whether, if the hole was at that place, the plaintiff was guilty of negligence in going between the cars while in motion at that rate of speed, and attempting to uncouple them. It would be no disobedience of the rules to enter there under the circumstances he related. He was an experienced brakeman. It was shown he was accustomed to couple and uncouple cars in moving trains, if the other conditions were favorable. He had been accustomed to do switching over this track for several months, almost daily, and sometimes twice a day. He must have been familiar with the roadbed between these switches. The switches were from 25 to 28 feet apart. He had a right to believe that the company would keep its main track evenly ballasted between these switches, and he would have been in no more danger in running upon the ground between the switches, even though it was dark, if the company had discharged its duty, than he would have been in any other place along the roadbed farther away from the switches. If he was injured at the switch,— that is, if the hole existed at the switch, and not at a distance from the switch,—the rule would be very different, and if he entered there it would have been a disobedience of the rules.

In *Denver, etc., R. Co.* v. *Smock*, 23 Colo. 456 (48 Pac. 681), it appeared that the plaintiff went before a train moving faster than a walk to make a coupling, and, observing that the link would not enter the drawhead, started to get out, when he was injured. A rule of the company required that employés "must be particular to notice the speed of the cars while moving, and, if at a dangerous rate, no attempt must be made to couple by getting between them." Of this rule the court said:

"It requires the utmost care in coupling or uncoupling cars, and directs employés to notice in particular the speed of the cars, and, if moving at a dangerous rate, they are

not to attempt to couple them; but it leaves the question of what is a dangerous rate of speed to be determined by the employé."

And so the rule in the present case does not prohibit the employé from entering between cars to couple or uncouple, but leaves him to judge of the favorable conditions, the rate of speed, and whether or not the footing is sufficient to warrant him in entering between them.

It is said that that part of the charge was erroneous where the court instructed the jury (using counsel's punctuation):

"It is for you to determine, from all the evidence and circumstances in the case, whether the plaintiff violated the rules, or not keeping in mind the rules that were offered in evidence and read to you; and, if you find that he did not, he is not precluded from recovery upon those grounds."

That this is a distinct statement to the jury that if, from all the evidence and circumstances, they found that the plaintiff violated the rules, or did not keep them in mind, those facts would not preclude him from recovery; that this charge took the rules, and the observance of them, out of the case.

We think the learned counsel for defendant entirely mistakes the meaning of this charge. In the stenographer's notes of the original charge a comma is omitted after the word "not," making the sentence read as quoted by counsel, and which possibly might have the interpretation contended for by him; but with the punctuation more in accordance with grammatical construction, and in accordance with what was involved in the case, the sentence reads:

"It is for you to determine * * * whether the plaintiff violated the rules or not, [you, the jury] keeping in mind the rules that were offered in evidence and read to you; and, if you find that he did not [violate the rules], he is not precluded from recovery upon those grounds."

We think this is the most natural meaning, and that the

jury could not have misunderstood it. So interpreted, there is no error in this charge.

From a careful examination of the whole record we are satisfied the case was fairly tried, and that no error of which defendant can complain was committed.

The judgment must be affirmed.

The other Justices concurred.