## NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY *v.* HAMLIN.

[No. 20,855. Filed January 30, 1907. Rehearing denied January 8, 1908. Motion to modify mandate overruled January 30, 1908.]

1. PLEADING.—*Complaint.—Master and Servant.—Railroads.—Failure to Inspect Foreign Car.*—A complaint by a servant against his railroad company for injuries caused by defects in a foreign car, that a nail was negligently maintained in a brake-beam of such

car; that plaintiff was ignorant thereof; that defendant negligently failed to give plaintiff notice thereof, and that plaintiff was injured thereby, states a cause of action.   p. 25.

2.   PLEADING.—*Complaint.—Master and Servant.—Railroads.—Failure to Inspect Foreign Car.*—A complaint by a servant against his railroad company on account of injuries caused by a defect in a foreign car, that a nail was negligently maintained in the brake-beam of such car; that defendant, knowing of such defect, negligently failed to repair same or to notify plaintiff thereof; that plaintiff was ignorant thereof, and sustained injuries thereby, states a cause of action.   p. 25.

3.   MASTER AND SERVANT.—*Railroads.—Foreign Cars.—Inspection.*—A railroad company receiving a foreign car to be transported over its lines is under the duty of exercising such reasonable care as the circumstances will permit to ascertain its condition, and, if unsafe, to repair same, or notify the servants of the defect.   p. 26.

4.   TRIAL.—*Interrogatories.—Construction.*—The courts will construe interrogatories to the jury and their answers as one document and reconcile them if possible without a strained construction of the language used.   p. 30.

5.   SAME.—*Interrogatories.—Presumptions.—Inferences.—Verdict.*—The presumptions and intendments arising in support of the general verdict do not arise to establish a contradiction in the answers to the interrogatories to the jury, except where the true import of such answers is doubtful.   p. 30.

6.   SAME.—*Interrogatories.—Coupling Cars.—Dangers.*—Answers to interrogatories that the coupling plaintiff was attempting to make when injured could not have been safely made by arranging the coupler on the standing car and permitting the impact to couple the cars, and that the reason it was not safe was "lack of time," must be considered with other answers showing that the train to be coupled was slowly moving toward such standing car and that such movement would have made the act of coupling dangerous.   p. 31.

7.   MASTER AND SERVANT.—*Performance of Duties.—Safe and Unsafe Ways.—Choice.*—Where the servant, for personal reasons, knowingly and voluntarily chooses an unsafe way to do his work, where a safe way is open, he is guilty of negligence.   p. 32.

8.   SAME.—*Duty of Servant to Exercise Care.*—Servants are required to exercise ordinary care for their own safety in the performance of their services.   p. 35.

9.   SAME.—*Railroads.—Coupling Cars.—Stepping in Front of Moving Cars.*—An experienced brakeman who voluntarily steps in front of a car, moving at the rate of two miles an hour, for the purpose of making a coupling, is guilty of negligence precluding a recovery for injuries received therein.   Gillett, J., dissenting.   p. 35.

10.—NEGLIGENCE.—*Proximate Cause.—Railroads.—Defective Cars.— Coupling.*—Where a brakeman in stepping in front of a slowly-moving car to make a coupling, was caught and injured by a nail negligently permitted to project from the brake-beam, his stepping in front of the car, and not the projecting of the nail, was the proximate cause of his injury. Gillett, J., dissenting. p. 36.

11.  SAME.—*Proximate Cause, What Is.*—The proximate cause of an injury is that which originates and sets in motion the dominating agency that necessarily proceeds through other causes as mere instruments, or vehicles, in a natural line of causation to the result. p. 36.

12.  APPEAL.—*Final Judgment.—Interrogatories.*—Where the answers to the interrogatories show that plaintiff, in a personal injury case, was guilty of contributory negligence, final judgment will be ordered for defendant. p. 37.

From Porter Superior Court; *Harry B. Tuthill,* Judge.

Action by Fred O. Hamlin against the New York, Chicago & St. Louis Railroad Company. From a judgment on a verdict for plaintiff for $4,000, defendant appeals. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901, p. 590. *Reversed.*

*Walter Olds, J. H. Clarke* and *N. D. Doughman,* for appellant.

*L. L. Bomberger, Marvin E. Barnhart* and *V. S. Reiter,* for appellee.

HADLEY, J.—Appellant appeals from a judgment rendered in favor of appellee for personal injuries claimed to have been caused by the former's negligence. The accident happened at Stoney Island, a large distributing switchyard of appellant, near the city of Chicago, in the early morning of July 1, 1903. The plaintiff, a practical switchman of sixteen years experience, was employed by appellant, and was acting as head switchman of a crew engaged at Stoney Island in breaking up trains as they arrived in the yard, and switching the cars to the various roads and tracks to which they severally belonged. The plaintiff, being the head switchman, had control over the movements of the engine, and it was the duty of the engineer (which was faithfully performed) to

respond to whatever signals the plaintiff communicated. About 4 o'clock on the morning of July 1, 1903, No. 35, a mixed train of about twenty cars, arrived at Stoney Island from Buffalo, and the crew to which the plaintiff belonged was set to work distributing the cars. Prior to breaking up the train, however, competent car inspectors examined the train, and Medland, an inspector, testified that he discovered on car No. 3,847, belonging to the Duluth, South Shore & Atlantic Railroad Company, from Buffalo, a projecting nail, in the bolt which went through the end of a brake-beam that hung about fifteen inches above the surface of the track, and immediately over the rail, and rested about six inches back of the end of the car, which bolt passed through the brake-head, and projected outward toward the end of the car about one and one-half inches. Through the projecting part of the bolt was a slot immediately outside the nut, and through the slot, as ordinarily constructed, should have been inserted a soft iron split key, turned backward around the bolt to prevent the escape of the nut. The soft iron key was missing, and in its place a nail had been forced through the slot, and the point turned outward toward the end of the car, and thus projected about one inch further than the bolt.

Two cars had been thrown out of the train on the main track and left standing. A little later the engine, pushing five cars, under the direction of the plaintiff, started down the track to pick up the two standing cars. The cars were backing toward the west. The plaintiff was riding on the side ladder near the northwest corner of the advanced car, which was car No. 3,847, containing the projecting nail. It was equipped with the Trojan coupler. The standing car had a coupler operating in the same way. The cars, by the devices, coupled by opening the knuckle of either one of the cars. It was not necessary to open both. The manner of coupling by these devices was by raising with the left hand a lever, located under the northwest corner of the car on which plaintiff was riding, to a holding notch that sup-

ported the lever. The lever would thus release the knuckle, and then the coupling might possibly be accomplished by reaching around the end of the moving car and with the right hand opening the knuckle of the moving car, then clearing the track and letting the cars collide; or the coupling might also be made by going in advance of the moving car to the southeast corner of the standing car and to the other side of the track, lifting the lever to the notch, opening the knuckle, then recrossing the track to the north side—the engineer's side—to give the necessary signals; or the coupling might be made by stopping the moving car until the knuckle in it, or in the standing car, could be opened, and then signaling a collision of the cars. On the occasion of the accident the plaintiff rode on the moving car till it drew near to the standing car. He then signaled the engineer to slow up, which he did, to the rate of two miles an hour. The plaintiff then lowered himself from the ladder, and lifted the brake lever with his left hand. The notch was out of repair and would not hold the lever, so holding the lever in his hand he stepped in front of the moving car, stepped over the rail, first with his right foot, extending his right hand, and laying it upon the coupler to open the knuckle, and as he carried his left foot over the rail something caught him on the inside of the left leg, midway between the foot and the knee, threw him to the track between the rails, and the forward trucks passed over him, inflicting the injuries for which he sues. The presence and position of the nail were not reported to the company, the defect was not repaired, and no notice thereof was given to the plaintiff and other employes whose duty it was to handle and manage the train. The plaintiff had no knowledge of the nail, and could not testify that it was the nail that caught him and caused him to fall on the railroad track.

The substance of these facts was averred in two paragraphs of complaint. A demurrer to each paragraph for insufficiency of facts was overruled. There was an answer of

general denial, verdict for appellee, and answers to interrogatories. A motion for judgment on the answers to the interrogatories was overruled, as was also appellant's motion for a new trial. Errors are assigned on all adverse rulings.

Was the complaint sufficient against the demurrers? The negligence alleged in the first paragraph was that the defendant hauled from Buffalo a certain defective and dangerous car, No. 3,847, belonging to the Duluth, South Shore & Atlantic Railroad Company. The defect is 1. described, and then it is averred "that a large nail was negligently placed and maintained on said brake-beam in a bent condition; that it projected and extended outward from the brake-beam toward the end of the car, a distance of about four inches, and was about eighteen inches above the surface of the ground, and in such a position as to come in contact with the person and clothing of the switchman engaged in coupling that end of said car; that the plaintiff had no knowledge of the defective and dangerous condition in time to avoid it, and the defendant negligently failed to give him notice thereof, although the defendant might have discovered it upon reasonable inspection; that by reason whereof the defendant negligently failed to furnish the plaintiff with a safe place to work and with safe appliances."

The second paragraph is like the first, except that it is averred that immediately upon its arrival in the yard at Stoney Island the defendant inspected the car, and 2. found the defective condition described, and knowing of said condition the defendant negligently failed to repair, though it had plenty of time, and wholly failed to give the plaintiff notice or warning thereof.

The objection presented to these paragraphs by appellant's counsel is that neither states sufficient facts to constitute negligence in appellant that appears to be the direct and proximate cause of the plaintiff's injuries. In a nutshell, the first paragraph appears to be based upon a failure to

inspect a foreign car, and the second paragraph, upon a failure to repair, or to give notice to the plaintiff of the defect.

When a railroad company in the general conduct of its business receives a foreign car to be transported over its lines, or handled by its employes in its general switch yards, it must under all circumstances exercise such reasonable care, as the time, place and exigencies of business will permit, to inspect such car, to ascertain if it is in a reasonably safe condition, and if it is found to be out of repair, unfit, or unsafe for the business for which it is being employed, it must place such car in a reasonably safe condition, or notify those of its employes who may be called upon to handle it of the danger or defect. *Louisville, etc., R. Co.* v. *Bates* (1897), 146 Ind. 564, and cases cited. So in this case appellee owed the appellant, as one of its switchmen, the duty of giving car No. 3,847, from Buffalo, a reasonable inspection, which it is averred in the first paragraph of the complaint it did not do, and furthermore it was a duty owing to the plaintiff to mend any discovered defect, or dangerous condition, or to notify the plaintiff of the existence thereof, all of which, it is alleged in the second paragraph, the defendant failed to do.

Neither paragraph of the complaint is subject to the general objection stated, and, no special objection to either paragraph being pointed out, we hold both paragraphs sufficient.

Was appellant entitled to judgment upon the answer of the jury to interrogatories? The answers referred to are to the following effect: The plaintiff was injured while attempting to make a coupling between car No. 3,847,—"Duluth, South Shore & Atlantic Railroad Company,"—and another car standing on the track. Car No. 3,847 was not in good repair, on account of a nail projecting from a bolt in the brake-beam, which brake-beam extended within six inches of the forward end of the car. Immediately before his injuries the plaintiff was riding on the outside ladder of the forward end of a short train that was backing down

to couple to a car standing on the track. When injured
the plaintiff was in front of the moving car, his right hand
on the knuckle, and his left hand holding the lever trying
to open the knuckle. The car was moving two miles an
hour. When the plaintiff jumped from the ladder to the
ground and entered in front of the car, the bolt in the brake-
beam was not in full view, but plaintiff, had he looked,
might have seen the end of the brake-beam containing the
bolt before entering upon the track. The plaintiff, at
the time, had control of the movements of the engine push-
ing the cars, by having command of the engineer in charge,
whose duty it was to obey plaintiff's signals and direc-
tions. The coupling of the cars attempted by the plain-
tiff might have been made without injury to himself by
going in advance of the moving car and opening the knuckle
on the standing car, and then permitting the cars to come to-
gether. The plaintiff, by slackening the speed of the moving
car, might have made the coupling with safety to himself,
by leaving the moving car two or three lengths distant from
the standing car, and going in advance of the moving car
and opening the knuckle on the standing car and then wait-
ing the impact. If the plaintiff had attempted to make the
coupling by advancing and opening the knuckle on the stand-
ing car without stopping the movements of the advancing
cars, it would not have materially delayed the work. The
plaintiff could have signaled and stopped the movement of
the advancing cars, opened the knuckle upon one of them,
and then signaled the backing of them together, which
would have delayed operations about one minute. The
plaintiff had been engaged as a switchman on this and other
railroads for sixteen years, and was an experienced switch-
man. It was dangerous to attempt to open the coupling on
the moving car by running in advance of it, as the plaintiff
was attempting to do at the time of the accident. The plain-
tiff, for lack of time, and from having his back to the mov-
ing train, could not safely have made the coupling by ad-

vancing to and opening the knuckle on the standing car. The plaintiff could have made the coupling with safety to himself by stopping the movement of the car upon which he was riding, opening the knuckle thereon and causing the car to advance to the other. The engineer in charge of the locomotive would, upon signal from the plaintiff, have reduced the speed of the moving car to a rate which would have given the plaintiff time to leave the moving car and advance to and open the knuckle on the standing car and clear the track, before the moving car arrived within dangerous proximity of the standing car. At the time of the accident it would not have been a safer method for the plaintiff to signal a slower movement of the cars, and then go ahead of the moving car and open the knuckle of the standing car, than it was to attempt to open the knuckle of the coupling upon the moving car by raising the lever and stepping in front of the moving car. It was unsafe for the plaintiff to attempt to open the coupler of the moving car by stepping in front of it, as he did at the time he was injured. The brake-beam, which extended over and about fourteen inches above the rails, had a bolt through the north head pointing forward, which bolt had a slot through it immediately outside the nut, and through the slot a nail had been forced and bent forward, which nail projected about one inch further forward than the end of the bolt. The plaintiff fell in front of the car, by being caught on the left leg below the knee and tripped by the projecting nail.

Appellee insists that certain of these answers relating to material questions of fact are in positive conflict, and should therefore be held as destroying each other, and disregarded in passing upon the general effect of the answers as a whole. Those called in question we quote:

"Q. Was it not the duty of the engineer in charge of the engine pushing the cars at the time of the accident to obey the signals and directions of the plaintiff? A. Yes. · Q. Could not· the coupling which the plaintiff was attempting

to make at the time of the accident have been made with safety to himself by stopping the movement of the car upon which he was riding and opening the knuckle thereon, and then causing the car to advance and make the coupling? A. Yes.    Q. If the plaintiff had stopped the moving car and opened the knuckle and then moved it forward to the standing car, how much, if any, would it have delayed the business at which he was engaged?    A. About one minute. Q. Could not the plaintiff have made the coupling, he was about to make when injured, with safety to himself by slackening the speed of the moving car two or three car lengths distant from the standing car, and going in advance of the moving car and opening the knuckle of the coupler on the standing car and then stepping outside the track and allowing the cars to come together and couple?    A. Yes. Q. Would not the speed of the moving car have been reduced by the engineer to a rate of speed allowing the plaintiff time to leave the moving car and go in advance of it and open the knuckle of the standing car and clear the track, before the moving car arrived within dangerous proximity of the standing car, if the plaintiff had signaled the engineer to do so?    A. Yes.    Q. Was not the plaintiff injured by attempting to open the knuckle of the coupler upon the car, while the same was in motion, by stepping immediately in advance of it?    A. Yes.    Q. Was it not unsafe to attempt to open the knuckle and make the coupling in the manner the plaintiff attempted to do it at the time he was injured? A. Yes.    Those claimed to be *contra* are: "Q. Could not the coupling the plaintiff was attempting to make have been made safely and without injury to him by his going in advance of the moving car and opening the knuckle upon the standing car?    A. No.    Q. If you answer the foregoing 'No,' then answer 'Why?'    A. For lack of time and for having his back to the moving train.    Q. Could not the plaintiff have made the coupling he was attempting to make at the time of the accident with perfect safety by going in advance

and opening the knuckle on the standing car which was to be coupled on the moving car, then stepping outside the tracks and allowing the cars to come together? A. No.'' It is further answered that it was not a safer method of making the coupling for the plaintiff to go ahead of the moving car and to open the knuckle of the standing car than it was to attempt to make it by stepping in front of and attempting to open the coupling of the moving car.

Upon first impression these answers seem to present a case of conflict. But before condemning them it is the duty of the court to take into consideration all the interrog-atories and answers, and construe them together as one document. As said in *Byram* v. *Galbraith* (1881), 75 Ind. 134: ''The answers upon which, under §337 of the practice act, judgment may be rendered, in opposition to a general verdict, are all the answers taken together, and not some of them without the others.'' And while the court should avoid straining the language to escape a conflict, it should at the same time give the questions and answers as a whole a reasonable construction. *Chicago, etc., R. Co.* v. *Hedges* (1889), 118 Ind. 5, 12.

It should not be held that the presumptions and intendments that arise in support of a general verdict arise also to establish a contradiction in the answers to the interrogatories, except that in cases of doubt that construction should probably be adopted which sustains the conflict. It should at least be presumed that the jury intended to make their answers consistent, and not self-destructive, and with due respect to the intentions of the jury the court should make a fair and reasonable effort to determine from the body of the findings the true intent and meaning of the jury.

In *Seekel* v. *Norman* (1890), 78 Iowa 254, it was held, as indicated by the headnote, that ''special findings will be understood and interpreted according to the evident intention of the jury, as shown by other and collateral findings, and

not by the mere letter of the interrogatory which the jury answers 'yes,' or 'no.' ''

In *Alhambra, etc., Co.* v. *Richardson* (1887), 72 Cal. 598, it is held that answers to interrogatories should be construed to avoid contradiction if it can reasonably be done, and ''when doubtful or obscure, reference may be had to the context for the purpose of ascertaining the true meaning.'' See, also, *Brown* v. *Ohio, etc., R. Co.* (1894), 138 Ind. 648, 655; 2 Elliott, Gen. Prac., §932; 20 Ency. Pl. and Pr., 369.

The apparent conflict and inconsistency in the foregoing answers disappear when the real intention of the jury is sought for. Other answers disclosed that the moving car was under the direction of the plaintiff, and that in making the coupling it was necessary to open the knuckle on but one of the cars, and that one might be on either the moving car or the standing car. It will be observed that there were two ways in which the coupling the plaintiff set about to make might have been accomplished, with safety to himself, namely: (1) By stopping the car he was riding on, opening the knuckle thereon, and then signaling its forward movement to make the coupling; (2) by signaling a slow-down of the moving train, leaving the car, on which he was riding, when two or three lengths from the standing car, and then going forward and opening the knuckle of the standing car and clearing the track before the arrival of the moving car to make the coupling.

It is evident from two of the interrogatories and answers that the jury had in mind, when they made said last four answers, the nearness of the cars at the moment the plaintiff attempted to make the coupling. Interrogatory twenty-nine calls attention to the coupling the plaintiff was attempting to make, that is, was already engaged in trying to make, and as relating to that particular time, the answer is, he could not with safety to himself have made the coupling by going forward and opening the knuckle of the standing car; and

the reason he could not have done so is given in the answer to interrogatory thirty: "For lack of time and for having his back to the moving car." It is altogether possible for the cars to have been so close together at that particular time that it was just as safe to step in front of the moving car and attempt to open the knuckle as it would have been, with his back to the approaching car, to attempt to reach the standing car, open the knuckle, and clear the track before the cars came together. It is only reasonable to construe the latter answers as referring to the particular time designated, and by so doing we make all the answers consistent and free from conflict.

But should it be conceded that the answers with respect to going forward and opening the coupling on the standing car are contradictory, and should be disregarded, the condition of appellee's case would be but little improved, for there is no pretense that there is a conflict in the answers with respect to safety in making the coupling if the plaintiff had pursued the course of stopping the moving car and opening the coupling on it. The stopping method was found to be open and safe to the plaintiff, but the stepping in front of the moving car, as the plaintiff did to open the knuckle, was found to be a dangerous thing to do.

Upon the strength of these findings appellant insists that even though car No. 3,847 was out of repair and defective by reason of having the nail projecting from the bolt in the brake-beam, yet if appellee had used due care in his method of making the coupling no harm would have come to him from the nail; and to sustain the contention invokes the well-established rule found in the domain of master and servant, that when there are two known ways of doing a thing—one safe and the other unsafe—if the servant voluntarily and knowingly chooses the unsafe way, because easier and more convenient, or for other personal reasons, he will be held guilty of negligence, and if injured by reason

of such negligence he will have no remedy. *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327; *Newport News Pub. Co.* v. *Beaumeister* (1904), 102 Va. 677, 47 S. E. 821; *Schoultz* v. *Eckardt Mfg. Co.* (1904), 112 La. 568, 36 South. 593, 104 Am. St. 452; *Gilbert* v. *Chicago, etc., R. Co.* (1903), 123 Fed. 832; *Morris* v. *Duluth, etc., R. Co.* (1901), 108 Fed. 747, 47 C. C. A. 661; *Union Pac. R. Co.* v. *Estes* (1887), 37 Kan. 715, 731, 732, 16 Pac. 131; *Carrier* v. *Union Pac. R. Co.* (1900), 61 Kan. 447, 59 Pac. 1075; *Haven* v. *Pittsburgh, etc., Bridge Co.* (1892), 151 Pa. St. 620, 25 Atl. 311; 1 Bailey, Per. Inj., §§1121, 1123; 5 Thompson, Negligence (2d ed.), §5372, and cases collated; *Quirouet* v. *Alabama, etc., R. Co.* (1900), 111 Ga. 315, 318, 36 S. E. 599; *Moore* v. *Kansas City, etc., R. Co.* (1898), 146 Mo. 572, 48 S. W. 487.

In the case of *Haven* v. *Pittsburgh, etc., Bridge Co., supra,* the defendant was reconstructing a bridge. To accommodate travel while taking down the old bridge the roadway was prepared to accommodate both vehicles and foot-passengers while the footways were being demolished. They were torn up for more than half way. The entrances to the footways were blocked, and the sentry informed the plaintiff and companion that they would have to take the roadway, as the footpaths were unfit for travel. They took the road-way, and when about two-thirds of the way over they left the roadway and entered upon the footway at a point the workmen had not reached in their work of tearing up. The roadway was perfectly safe for the rest of the distance. On the footway the plaintiff stepped on a board lying bottom side up, with a nail protruding upward, that penetrated the plaintiff's shoe, causing her to fall and injure herself. At page 627 the court said: "The case is brought directly within the familiar line of decisions, which hold that when a person, having the choice of two ways, one of which is perfectly safe, and the other of which is subject to

risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover.''

In the case of *Quirouet* v. *Alabama, etc., R. Co., supra,* the plaintiff, an employe, attempted to board a loaded flat-car, which was part of a train moving at the rate of five or six miles an hour. Said car was the fourth from the caboose, was the proper car for him to board, was equipped with low and convenient steps, and could have been boarded with perfect safety. In his effort to board the flat-car he put his foot upon the journal, or grease box, and, springing, threw his hand and wrist around a heavy standard in the side of the car, which rolled in its socket, causing the plaintiff's foot and leg to fall under the wheels. The court said with respect to these facts: ''While it was more inconvenient, still he [plaintiff] could have reached the car by going first upon the caboose, * * * which had appropriate appliances for use in going upon it, and it was his duty to use the more appropriate and less dangerous method. In such a case, the use of the more dangerous method, even though it be the one of greater convenience, would preclude a recovery, if injury results. * * * 'If there are two apparent ways of discharging the required service, one more dangerous than the other, the employe is bound to select the latter, and is guilty of such negligence as will bar an action for damages if he selects the former and is thereby injured.' ''

In §1121, *supra,* Mr. Bailey says: ''It is a familiar principle, which common sense as well as the rules of the law ought to teach any one, that where an employe of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence.''

The rule is rooted in the principle of public policy that enjoins upon every one the duty of exercising due care to

preserve his body and health from mutilation and

8. injury. The individual is given strength, reason, ears and eyes as means of general protection, and he is in duty bound to employ these under all circumstances in a reasonable manner for the promotion of his own personal safety. So in whatever station or place he may be, the employe is never excused for an abandonment of care in the avoidance of bodily harm. Even the quantum of care imposed by law upon the master, in providing a suitable and safe working place and appliances for his servant, does not in any degree diminish the servant's duty to take care of himself, and heed any apparent danger, whether the same is usual or extraordinary; and a servant with knowledge of existing perils, gained through observation, or from a long continuance in the business, is bound to make use of such knowledge, and look out for such dangers as experience has taught him is liable to produce injury. *Brazil Block Coal Co.* v. *Hoodlet, supra; Pennsylvania Co.* v. *Finney* (1896), 145 Ind. 551, 558; *New York, etc., R. Co.* v. *Ostman* (1896), 146 Ind. 452, 464.

The plaintiff had been for sixteen years employed as a switchman in the yards of appellant and other railroad companies, and was chargeable with knowledge that it

9. was unsafe to step in front of a moving car to open the knuckle preparatory to a coupling; and also bound to know that a safe way to effect a coupling was to cause the moving car to be stopped until the necessary adjustment of the coupling could be made. He had both knowledge of the hazard and the authority to make the safe way available, and having, with his eyes open, voluntarily chosen the unsafe way, we see no escape from bringing his case within the operation of the rule before stated. 1 Bailey, Per. Inj., §1125. At the time he selected the unsafe method he had before him two safe ways, both available, and both under his absolute control, and neither of

which would have delayed the movement of the cars more than one minute. "It is abhorrent to reason and common sense," says the court in *Loranger* v. *Lake Shore, etc., R. Co.* (1895), 104 Mich. 80, 62 N. W. 137, "to say that it is good and safe railroading and careful conduct for a brakeman to step in front of a train moving as fast as a fast walk, and perform the service which requires him to step sideways to keep out of the way, knowing that death is almost sure to follow should he miss his footing."

We are unable to accept the contention that, assuming the answers show that appellee was guilty of negligence, and took the risk of going in front of the moving car, his conduct should not avail appellant as a defense, because it is also shown by the answers that it was the nail projecting from the brake-beam, and not his entry upon the track in front of the moving car, that constituted the proximate cause of his injury.

The nail of itself was harmless. It was a source of danger only when in motion, and then ordinarily only to one in a place where he had no right to be. At most it was but a subsidiary or concurring cause. There has been much learning indulged by the courts in defining the distinction between the paramount or efficient cause of an accident and the causes that are merely incidental or instrumental to the superior responsible agency. Being the nearest in order of time is no criterion. The proximate cause is that which originates and sets in motion the dominating agency that necessarily proceeds through other causes as mere instruments, or vehicles, in a natural line of causation to the result. *Pennsylvania Co.* v. *Congdon* (1893), 134 Ind. 226, 39 Am. St. 251; *Billman* v. *Indianapolis, etc., R. Co.* (1881), 76 Ind. 166, 40 Am. Rep. 230. No one can say that the plaintiff would not have fallen on the railroad track if the nail had been absent from the brake-beam, but it may be said, with certainty, that if he had not wrongfully gone

to, and cast himself upon, the nail, it would not have harmed him.

Suppose appellee, desiring to cross to the other side of the track, should attempt to do so by crossing under one of the cars of the moving train, and that while under the car an unexpected and unknown broken rod should catch his clothing and delay him so that he should be overtaken and injured by the wheels. Could it be said in that case that the broken rod would be the efficient and proximate cause of the injury?

Such a parallel cannot be avoided by saying that in going under the car he went into a dangerous place where his business did not call him, and where he was not expected to go, for appellee did precisely that thing when he attempted to open the knuckle of car No. 3,847 in the manner he did.

We think the answers to the interrogatories clearly show that the plaintiff was guilty of contributory negligence, and that the appellant's motion for judgment thereon in its favor should have been sustained. The judgment is therefore reversed, with instructions to sustain appellant's motion for judgment in its favor on the interrogatories, and to render judgment in favor of appellant for costs.

Monks, C. J., concurs in result. Gillett, J., dissents.

## DISSENTING OPINION.

GILLETT, J.—I dissent. For present purposes it is unnecessary to consider the ultimate question of affirmance or reversal. My objection goes to the course of reasoning by which a reversal is reached. A word as to the evidence: The car was moving at the rate of a slow walk, or, as otherwise stated, at a speed of about two miles an hour. The work was required to be done in haste. About one minute would have been lost if the car had been stopped to adjust the coupling. It would only have taken a second to open

the knuckle, had it worked properly. There was expert testimony that appellant was proceeding in the proper way to make the coupling. There was also testimony that it was not proper to run ahead and arrange the knuckle on the other car, because a man could not run and give signals at the same time, as that involved getting out of sight of the engineer.

The majority opinion is based on the answers to interrogatories. But there is not a fact found by the jurors in their answers in this case which can be said to be in necessary conflict with the general verdict. The finding that it was unsafe to make the coupling as appellee was attempting to do can be explained on the hypothesis that it was dangerous so to do with the car in its defective condition, a fact that appellee had no knowledge of. This very distinction was suggested in *Baird* v. *Chicago, etc., R. Co.* (1883), 61 Iowa 359, 361, 13 N. W. 731, 16 N. W. 207, where the court said that the jury's finding must mean that the making of the coupling by the plaintiff "was more dangerous than it would have been if the car to which he was to couple had been in the usual condition of a car to which coupling is made." The question of proximate cause being ordinarily a question of fact (*Davis* v. *Mercer Lumber Co.* [1905], 164 Ind. 413; *Chicago, etc., R. Co.* v. *Pritchard* [1907], 168 Ind. 398, 9 L. R. A. [N. S.] 857; 1 Thompson, Negligence (2d ed.), §§161-164), the general findings commit the jury to the greatest possible extent to the proposition that appellee was not guilty of negligence in stepping in front of the car. There is certainly nothing in the answers to interrogatories to give aid or comfort to appellant.

It will be perceived that the court's opinion, when reduced to its last analysis, amounts to this: That a switchman who steps in front, and attempts to walk in advance, of a car which is moving as fast as a slow walk, is guilty of contributory negligence, and this conclusion is reached, over the verdict of the jury and in disregard of expert testimony

that it was proper so to do, and notwithstanding the practical difficulties which any other course would involve.

All men take some risks, and it cannot in every case be affirmed that there is contributory negligence as a matter of law because the plaintiff voluntarily and unnecessarily exposed himself to danger. Beach, Contrib. Neg. (2d ed.), §37. As stated by this court in *Town of Albion* v. *Hetrick* (1883), 90 Ind. 545, 547, 46 Am. Rep. 230: "It is only when the standard of duty is fixed and certain, or where the measure of duty is defined by law, or when the negligence is so clear and palpable that no verdict could make it otherwise, that the question of negligence becomes one of law and not of fact."

If the question of negligence is one of fact where reasonable minds might differ as to the ultimate inference to be drawn, I do not perceive how this court can regard itself as warranted in saying that in this case there was contributory negligence. As was said by the supreme court of Michigan in *Ashman* v. *Flint, etc., R. Co.* (1892), 90 Mich. 567, 574, 51 N. W. 645: "Are judges supposed to know anything more about the proper manner of performing a switchman's or brakeman's duties than jurors? The answer is obvious. A jury of twelve men, drawn from the body of the people, and from all the avocations of life, would be more likely to have among its members men familiar with switching or braking upon railroads than would the bench, composed of men whose whole lives have generally been devoted to one subject—the study and practice of law; and among these twelve men quite frequently might be found men who had been switchmen or brakemen. When the inquiry arises in any case what an ordinarily prudent man would have done under given circumstances, the judgment of twelve men is obviously better than the judgment of one, as the experience in life of twelve men must have been, collectively, more varied and extensive than that of any one man, however learned in the law he may be; and how men

ordinarily act in the presence of danger, or to avoid it, can be better settled by twelve men than one man, because their united experiences are brought to bear upon the question, and each has the benefit of the experience of all of them in arriving at a fair, true and just conclusion.'' In this connection attention may very appropriately be called to the following wise observations of Denman, J., in *Finegan* v. *London, etc., R. Co.* (1889), 53 J. P. 663: ''I think to make questions of law out of what are in their real nature questions of fact for a jury does harm and not good, and it tends to unsettle the law rather than to settle it, and I am confirmed in the view, I think, by that which is certainly an undoubted but deplorable fact, that whenever questions of negligence are argued and put forward as questions of pure law then the difficulty arises, and in most cases they divide judges of great experience and great acuteness more than any other questions which have ever been discussed in courts of justice.''

It is a settled proposition that it is not negligence *per se* for a switchman to go between slowly moving cars to couple or uncouple them. *Chicago, etc., R. Co.* v. *Lee* (1902), 29 Ind. App. 480; *Pittsburgh, etc., R. Co.* v. *Elwood* (1900), 25 Ind. App. 671; *Flutter* v. *New York, etc., R. Co.* (1901), 27 Ind. App. 511; *Illinois Cent. R. Co.* v. *Cozby* (1896), 69 Ill. App. 256; *O'Neill* v. *Chicago, etc., R. Co.* (1901), 62 Neb. 358; *Knapp* v. *Chicago, etc., R. Co.* (1897), 114 Mich. 199, 72 N. W. 200; *Eastman* v. *Lake Shore, etc., R. Co.* (1894), 101 Mich. 597, 60 N. W. 309; *Jarvis* v. *Flint, etc., R. Co.* (1901), 128 Mich. 61, 87 N. W. 136; *Munch* v. *Great Northern R. Co.* (1898), 75 Minn. 61, 77 N. W. 541; 1 Labatt, Master & Serv., §334; Beach, Contrib. Neg. (2d ed.), §364; 5 Thompson, Negligence (2d ed.), §§5566, 5593, 5595.

Some limit must certainly be placed on the consequences of a servant taking the more hazardous course. As was said in *Florida Cent. R. Co.* v. *Mooney* (1898), 40 Fla. 17,

32, 24 South. 148: ''If, in the performance of his duties, two or more methods are open to him, and he has no instructions to pursue one in particular, he necessarily must choose between them, and he cannot be said to have been negligent if he in good faith adopts that which is more hazardous than another, provided the one pursued be one which reasonable and prudent persons would adopt under like circumstances. Any other rule would require the servant to be measured by the standard of very prudent persons, for only extremely cautious persons ordinarily adopt the least hazardous course where both are considered safe and appropriate. For this reason it cannot be held as a matter of law that in all cases where a servant is injured while pursuing a method voluntarily adopted by him, more hazardous than other available methods, he is guilty of contributory negligence, for *non constat* the method pursued may be one which prudent persons would ordinarily exercise under like circumstances. Ordinarily the question of contributory negligence is one of fact for a jury under proper instructions from the court, and it is only in those cases where the conclusions and inferences to be drawn from facts in evidence are indisputable, involving a common instinct of mankind —self-preservation—that it becomes a question of law.''

As regards the claim that the car should have been stopped, it strikes me that that is an academic, rather than a practical, view of the question. As was pertinently stated by one of the witnesses in this case, ''you can't run a railroad that way.'' In this connection I quote the following observations of the Illinois appellate court, in *Illinois Cent. R. Co.* v. *Cozby, supra:* ''It is manifest that in extensive yards, where much switching is to be done, the business of a railroad company could not be transacted, if every train was brought to a dead halt in order that cars might be coupled and uncoupled. We cannot hold that Craiglow was necessarily guilty of negligence because he undertook to un-

couple cars which were moving at the rate of two or three miles an hour.''

It would, of course, be clear that had appellee fallen as the result of stepping in front of the car, for instance, by being caught by the brake-beam, he would have had no remedy, for he assumed that risk. In this case, however, he was injured—at least we may assume so from the majority opinion—by a defect in the car that he knew nothing of. If appellee would have accomplished his task without injury but for the protruding nail—an inference that the jury was authorized to draw—then it would not appear that the risk he took was in a legal sense contributory to his injury. As pointed out in 1 Bailey, Per. Inj., §1122: ''The result is not the true test.'' I do not find myself impressed with the argument that appellee was guilty of contributory negligence because if he had not been in the place, which for some other reason was dangerous, he would not have been hurt. Proximate cause must have some moral relation to the occurrence complained of. The law would cease to be a practical science, and the courts would be led into the mire of sophistical discussion when once they began to recognize the view that the accidental propinquity of the plaintiff to the thing that did him harm had any necessary relation to his responsibility for the injury. It has been held in a number of jurisdictions, that where switchmen attempting to couple moving cars, have been injured by defects which had no relation to the hazards they assumed, it could not be said as a matter of law that their conduct was the proximate cause of their injuries. *Lake Erie, etc., R. Co.* v. *Craig* (1896), 73 Fed. 642, 19 C. C. A. 631; *Curtis* v. *Chicago, etc., R. Co.* (1897), 95 Wis. 460, 70 N. W. 665; *Baird* v. *Chicago, etc., R. Co.* (1883), 61 Iowa 359, 13 N. W. 731, 16 N. W. 207; *Louisville, etc., R. Co.* v. *Pearson* (1892), 97 Ala. 211, 12 South. 176. No case has been called to my attention which militates against the above authorities.

There may be room for doubt whether the jury was au-

thorized to infer that appellee was injured by the protruding nail. My objection, however, as before stated, does not go to the result, but to the means by which it is attained. I can but regard the majority opinion as out of line with principle and authority, and for the reasons stated I feel constrained to dissent.